## TITUS HUTCHINSON *v.* RANSALAER D. GRANGER.

In actions of tort, the plaintiff is in general bound to prove no more of his declaration than is is necessary to constitute a good cause of action.

Hence, in an action for flowing plaintiff's land, where it was alleged that the defendant unlawfully erected and kept up a certain dam, and the proof offered was, that he kept the gates or sluices in the dam shut, when he should have kept them open, and thereby caused the injury complained of; *It was held,* there was no variance between the proof offered and the allegation in the declaration.

In such case, where the defendant had a right to keep the sluices shut, except when the water was of a certain height, and he kept them shut at times when he should have opened them; *It was held,* the plaintiff might declare generally that the *whole* dam was *unlawfully kept up,* and recover upon showing that the *gates, only,* were unlawfully kept shut.

*General damage,* or such as is the common or ordinary consequence of the act complained of, need not be specially alleged in the declaration; and if some portion of the plaintiff's general damages be alleged, this will not preclude him from giving evidence of other general damage.

In actions for flowing land, the injury, i. e. the flowing of the land, and the means by which it is done, must be *substantially* alleged, but any general *damage,* such as rendering the land wet and unproductive, and more difficult to cultivate, and destroying crops, either in the process of growth, or harvesting, need not be alleged.

The particular *form* of an allegation of *substance,* merely, is not important.

TRESPASS on the case for flowing the plaintiff's land.

The plaintiff declared, ' in a plea of the case for that the ' plaintiff, at Woodstock, on the first day of May, A. D. ' 1830, was and ever since has been and still is possessed of ' a certain close, being twenty-five acres of meadow land, ' in said Woodstock, (describing it) through which meadow ' there has during all that time run, and still runs, a brook ' called Oil Mill Brook, which runs northwardly by the jail, ' in said Woodstock; yet the said Granger, well knowing ' the premises, but contriving and maliciously intending ' wrongfully and unjustly to hurt, injure, and prejudice the ' plaintiff, and cause the water of said brook to set back and ' flow out of its channel upon the said meadow of the plain- ' tiff, and cause the said meadow to become wet and cold, ' and less fertile than it would otherwise be, and to destroy ' the grass of the plaintiff, growing, and that would grow, upon ' said meadow, and to deprive the plaintiff of the profits of ' his said meadow, at said Woodstock, on the said first day ' of May, 1830, and from thence until the present time, ' hath wrongfully and unjustly kept and continued, and caus- ' ed to be kept and continued, a dam, which had before ' been wrongfully erected, set up, put down and placed in, ' over, and across the said brook, northwardly, by and down ' the said brook from the said meadow of the plaintiff; and, ' during all that time, kept and caused to be kept the sluices ' and gates in said dam so shut and closed, that the waters, ' of said brook were prevented from flowing through the said ' meadow of the plaintiff in the natural channel of said brook, ' and were caused to set back upon the said meadow of the ' plaintiff, during all the time aforesaid; by reason of all ' which doings of said defendant, and of said waters of said ' brook being obstructed in the manner aforesaid, the said ' meadow became, and, during all the time aforesaid, has ' been, and yet is, less fertile than it used to be, and less ' fertile than it would otherwise have been, and has become ' cold and wet, and the good grass, well growing and rooted ' on the said first day of May, has died and ceased to grow, ' and coarse wild grass has grown up in its stead; and that ' he has, all that time, sustained great injury both in the ' quality and quantity of the grass, growing from year to year ' upon said meadow, all which is to the damage of the ' plaintiff, as he says, the sum of five hundred dollars.'

The defendant pleaded not guilty, and issue was joined to the country.

On the trial in the county court, it was conceded that the plaintiff held title to the land described in his declaration, by several mesne conveyances, under a deed from Stephen Powers to Elkanah Phelps, dated May 21, 1802.

The plaintiff introduced testimony tending to show that, during the summer seasons of the years mentioned in his declaration, the water was frequently more than four inches above the top of the defendant's dam, and so overflowed the plaintiff's land as to render it difficult to harvest the grass thereon, and, in one instance, washed and destroyed several tons of hay; that the defendant wholly refused to hoist the gates in said dam on such occasions, and refused to permit the plaintiff so to do, and when the gates were raised by the plaintiff they were immediately shut and fastened by the defendant.

The defendant read in evidence a deed from Jason Richardson to James Wilder, dated August 11, 1792, conveying land and water privileges, and it was conceded that Richardson owned both the plaintiff's and defendant's land prior to the ownership of Stephen Powers, and that Wilder conveyed his right to Elkanah Phelps. The defendant also read in evidence the deed from Powers to Phelps, under which, through intermediate grantees, the plaintiff holds the land in question, which contained a covenant or agreement as follows:—' And the said Phelps agrees, that, at any time be-
' tween the first of May and the last day of August, when
' the waters exceed four inches in height above the top of
' said dam, the waters may be, by hoisting the gates, lowered
' to that height, and the said Phelps will so lower said waters,
' (if they may be) by hoisting said gates.' The following agreement was also annexed to said deed.

' It is agreed that said Phelps shall have the privilege of
' overflowing the land in consequence of raising the dam at
' the height within mentioned, without being liable to me, my
' heirs or assigns (in) any damages, whether the same land is
' conveyed by this instrument or not.    [Signed,]
                                                    STEPHEN POWERS.'

This latter agreement was witnessed by only one of the subscribing witnesses to the deed, and was not sealed.

The defendant also read in evidence a decree of the court of chancery in the case of *Lyman Mower and R. D. Granger* v. *Titus Hutchinson*, reported in 9 Vt. R. p. 242. And it was conceded that the defendant had not erected or kept up any higher or different dams than was authorized by said deeds to Wilder and Phelps, and that the rights of Phelps, relating to the dam and water privilege, had been duly conveyed to the defendant.

The plaintiff insisted that he was entitled to recover in this action for the damages which had been occasioned him by the defendant's keeping the gates in said dam shut when the water was more than four inches above the top of the dam, and so requested the court to charge the jury. But the court instructed the jury that, for that damage, the plaintiff was not entitled to recover in this action.

The jury returned a verdict for the defendant, and the plaintiff excepted to the charge of the court.

The case was argued twice, previous to the present term, and continued each time for further argument.

Plaintiff, *pro se*, contended that, in actions of tort, where enough of a declaration or plea is proved to support the right set up, other matters, in the same declaration or plea, need not be proved ; and that, if the plaintiff prove any part of his case, it is sufficient, such parts as are not proved being treated as immaterial, or surplusage ; and cited 2 Saund. R. 74, *b.* in note. *Turner* v. *Johnson*, Cro. Eliz. 336. *Navigation Co.* v. *Douglass, et al.*, 2 East, 497. *Jones* v. *Clayton*, 4 M. & S. 349. *Harborough* v. *Wilkie*, Id. 474. *Figgins* v. *Cogswell*, 3 M. & S. 369. *Vowles* v. *Miller*, 3 Taunt. 137. *Draper* v. *Garratt*, 2 B. & C. 2. (9 E. C. L. 3.) *Stoddart* v. *Palmer*, 3 B. & C. 2. (10 E. C. L. 4.) *Cockrell* v. *Gray*, 3 B. & C. 186. (7 E. C. L. 403.) Cro. Jac. 629. *Ricketts* v. *Salwey*, 2 B. & A. 360. *Compagnon* v. *Martin*, W. Bl. 790. *Baraclough* v. *Johnson*, 35 E. C. L. 337. *Spilsbury* v. *Micklethwaite*, 3 Taunt. 147–8. *May* v. *Brown*, 3 B. & C. 113. (10 E. C. L. 25.) *Briggs* v. *Murdock*, 13 Pick. 305, 318.

*Marsh & Barrett*, for defendant.

It being understood, by defendant's counsel, that the court

WINDSOR, *February,* 1841.

Hutchinson *v.* Granger.

have doubted whether, in case the defendant had pleaded a special justification, the plaintiff might not, by *new assignment*, have stated the facts which he, at the trial, offered in evidence, and whether, as defendant pleaded the general issue, he may not now give them in evidence ;—

The defendant insists ;

I. That in case, for *consequential damages*, the replication by new assignment is never interposed.

1. The nature of the action is such, being a special action on the case, that the cause of action must be fully and correctly stated—must be proved as stated, and cannot be varied at all by new assignment. Any variation necessarily makes it a different *case*. Bull. N. P. 78, 79.

Otherwise plaintiff may sue on one case and recover on another and different case. Every action on the case is one *sui generis*, a novelty. *Bird* v. *Randall*, 3 Burr. 1353.

2. This action is in the nature of a bill in equity, " for " whatever will in equity and good conscience bar the plain- " tiff's recovery, may, in this action, be given in evidence by " defendant." *Bird* v. *Randall*, above cited. The defendant is never, therefore, bound, and rarely can plead in bar. So may the plaintiff, under that issue, give in evidence any thing that will help his case ; but he cannot, by *new assignment*, or offering evidence of a different case, bring forward a new cause of action for trial, but must, as in every other case, prove his allegations as stated in his declaration. There is no instance to be found in the books where a replication, by new assignment, has ever been interposed in this form of action.

II. If in cases, generally, a plea in bar might be pleaded, yet, *in this case*, none such could have been relied on, and certainly none such as would have admitted of a *new assignment*. The whole case, all the facts, are spread out in the bill of exceptions.

What special plea in bar could have been pleaded in the case ?

III. The damages, in this form of action, must be specially alleged, being the gist of the action. The plaintiff as well knows what injury he has sustained when he brings his action as he ever can know. No action accrues till damages are sustained, in case, for consequential damages. These

are always special, and must be distinctly stated and proved. None other can be proved.

What excuse can there be suggested for assigning damages different from those alleged in the declaration ?

There is no decision, nor even *dictum*, nor any pleadings, in any book of entries, to justify such an attempt.

*New assignment*, even in trespass, never goes any further than to state more definitely *the time when or the place where* the trespass was committed, so as simply to avoid the bar as to those circumstances, viz. the time when and the place where the act complained of was committed.

It appears from the exceptions that the point in the charge, complained of, was, that *the damages proposed to have been proved could not be recovered in this action.*

If, then, the damages claimed in the new assignment, or those offered to be proved, cannot be varied from those stated in the declaration, there is no ground for a new trial.

IV.  The damages claimed in the declaration are for *a permanent injury to the soil, rendering it wet and cold,* so that good grass would not grow, &c., and this is claimed as resulting jointly from continuing the dam wrongfully and keeping the gates in the dam shut and closed.

Those proposed to have been proved at the trial were *a mere temporary inconvenience* to the plaintiff, in harvesting the hay, and a loss of a ton or two of that article.

The former could not have arisen from the mere neglect of raising the gates in flood time, though the latter might. Are they, then, not different damages, and must they not arise from different causes ?

V.  The proof offered at the trial, and overruled by the court below, in connection with the deed of 1802, from Stephen Powers, was intended to show, that, upon a certain occasion, at some time between the months of May and September, the water was more than four inches deep on the dam ; that, on that occasion, the defendant refused to raise the gates, and even closed them when raised by the plaintiff, and that thereby the water set back upon the meadow so that the plaintiff could not harvest his hay, and that he lost several tons.

It will be observed that if any such duty, as seems to be supposed, was incumbent on the defeneant, the performance

*Windsor,
February,
1841.*

Hutchinson
*v.*
Granger.

WINDSOR,
February,
1841.

Hutchinson
v.
Granger.

of it is limited to a particular time and other circumstances and occasions.

It does not appear from the declaration, nor from the statement of the evidence offered, that the injury happened during the period in which the defendant ought to have raised the gates, except, perhaps, that plaintiff may suppose that it was in haying time, and, therefore, it will be presumed to have happened between May and September. Nor is any other fact or occasion stated, except the allusion that water was four inches deep on the dam, yet, no intimation that that circumstance could create any duty on the defendant.

It is not even averred that there was any duty incumbent on defendant in relation to raising the gates, by reason of the tenure under which he held, or otherwise.

Should the plaintiff obtain a verdict on this declaration, and the testimony offered, who can ever tell why, or on what evidence, damages were assessed?

VI. In the declaration, *the keeping of the sluices and gates closed,* is not introduced as a substantive charge occasioning the injury, or as a ground of damages, independent of *continuing the dam wrongfully,* but is introduced as constituting a part of the same and as dependent on the wrong of continuing the dam, and both are construed together as producing the injury complained of, " by reason of all which doings of the defendant, and of the waters being so obstructed, the waters were turned out of their natural channel," &c.

The former seems rather intended as an aggravation of the latter charge. It is not stated that the continuing the dam might be lawful ; that any duty to raise the gates was incumbent on the defendant at any time, or under any circumstances. This indefinite allusion to keeping the gates closed, is not such a substantive charge, or description of the cause of action, as to justify a more definite statement of it by *new assignment,* or giving the facts proposed in evidence under the general issue.

VII. There is another and decisive reason why this evidence could not be admitted to sustain this declaration.

A verdict and judgment on this declaration, on whatever evidence obtained, would establish the plaintiff's right to contest the defendant's right to erect or continue the dam,

or overflow the *locus in quo*, at any season of the year, not-withstanding the decree establishing such right, and such verdict might be given in evidence in any action hereafter brought, and would become conclusive evidence against defendant. 1 Strange, 200. 5 Esp. R. 59.

The opinion of the court was delivered by

REDFIELD, J.—The present is an action of trespass on the case, for flowing the plaintiff's land by means of a dam on defendant's land, which had been kept up by him. The principal controversy in the case seems to have been determined by a former decision of this court, in chancery. The plaintiff still claims damage, to some extent, and offered testimony in the court below to show such damage, which was rejected by that court on the ground of variance.

The declaration, in this case, alleges that the entire dam was wrongfully erected and kept up by the defendant. The proof was, that in the summer season, when the water was more than four inches deep on the top of the dam, the slui-ces should be raised, *i. e.*, the defendant was bound by cov-enant, running with the land, to raise them so as to lower the water to that height, if it might be, by opening the sluices.

In actions of tort, it is well settled that the plaintiff is not bound to prove his whole declaration. If he prove enough of his declaration to make a good cause of action, he is enti-tled to recover. He must prove the very injury of which he complains, but not to the full extent. If he alleges the dam to be *ten* feet high, or unlawfully *erected*, or *wholly* unlawful, he may recover upon showing it *five* feet high, or unlawfully *continued*, or *repaired*, and made *tighter* or *higher*, so that, in fact, it is but *partly* unlawful. If any *portion* of the dam is unlawfully *erected* or *kept up*, and it cause an injury to the plaintiff of the kind he complains of, he may recover. And whether the dam was unlawfully *kept up* one *day* or one *year* is not material. If, then, *any portion* of the defendant's dam was unlawfully *kept up* for a *single day*, so as to cause injury to the plaintiff, in the manner alleged, he is entitled to recover. 1 Stark. Ev. 6. Ed. 379, 400, and cases cited. And we do not think it important whether it were the gates and sluices that were unlawfully kept up, or any other part of the dam. If the defendant had a right to

build a dam *five* feet in height, or of wood, which will let the water *half* ooze through the crevices, or with certain *sluices* open, and he build one *ten* feet high, or of *impervious wall*, or with the *sluices closed*, and thereby flow the plaintiff's land, so as to cause injury, he is liable to an action. And in each of these cases the plaintiff may declare that the dam was unlawfully erected and kept up. He is not bound to prove the full extent of the wrong alleged, but may recover for any, the least portion of it, which causes him a legal injury. So, too, if he takes redress into his own hands, he can only *abate the nuisance,* so far as it is *unlawful.* *Nicholson v. Croft,* Burr. 1188. *Gardiner v. Croasdale,* 1 Wm. Black. 200.

This is the only degree of strictness which is ever required in describing an injury, in an action of tort, or even in indictments for forcible injuries and wrongs. If an assault is alleged to be with a *wooden staff*, and prove to have been done with a *stone*, it is no variance. 2 Stark. Ev. 41. So, too, in all cases of indictment for nuisances, if the respondent is guilty of any part of the wrong alleged, he must be found guilty, and the abatement will take place accordingly. The same is true in all actions where the allegation is divisible without destroying its identity. 1 Stark. Ev. 382, *et seq.*

But it is argued by the defendant's counsel, that the plaintiff has not sustained the same injury of which he complains. The plaintiff alleges that defendant flowed his land, and here he might have stopped. There was no necessity of specifically setting forth any such damage as is the common and ordinary consequence of the act complained of, such as making the land wet and less productive, and more difficult of cultivation, and destroying crops grown, or in the process of harvesting.

Any man of common discernment would expect this from the wrong complained of. None of these things come within the definition of "special damage," which must be something unusual and extraordinary, and not the common consequence of the wrong complained of. And the fact that the plaintiff gratuitously undertakes to enumerate some portion of his *general damage,* and which he might have proved without alleging it, will never preclude his also proving other general damage. And no one, I think, will pretend that the dam-

age offered to be shown in this case is not *general damage.* But it is further argued that the plaintiff should have declared against the defendant, " for not taking his gates down when he was bound to," whereas, the declaration is that he " unlawfully kept them up." Here is, indeed, a difference in *form* but not in *substance.* It is merely formal whether we say a man is *dead*, or that he is *not alive*, the terms are understood to be equivalent.

We have regretted that the different members of the court should entertain opinions on this subject so exceedingly diverse ; but as questions of variance are more or less isolated, and depend so much upon their pecluiar circumstances, so that each new case is without precedent, and is not likely to become a precedent for any other, and, as is said by Mr. Starkie, (1 Ev. 6 Ed. 389,) these questions, especially in actions of tort, being addressed mainly " to the discretion of the court," it was not much to be wondered at, that the court might entertain different opinions, and it was also obvious, that when a cause had been three times argued, with the same result, it was desirable it should be decided.

<div align="right">Judgment affirmed.</div>

Williams, Ch. J., dissenting.