BENJAMIN. F. SIMONS v. DAVID BURNHAM.

*Libel—Words actionable per se—Innuendo—Inducement—Justification—Evidence—Error without prejudice—Damages.*

1. Where, in an action for libel, the alleged libelous words, standing alone, are unambiguous, they must be construed in their ordinary sense, in the light of such allegations of the circumstances surrounding the transaction as the declaration sets forth.

2. A statement that a merchant has conveyed $10,000 worth of real estate to his wife for $5,000; that his other real estate is heavily mortgaged; and that he is heavily indebted to banks, upon which indebtedness he is paying a high rate of interest, giving the rates,—if it has no significance further than a *personal* one, is not libelous *per se.*

3. Such a statement, sent to firms from whom the merchant is in the habit of purchasing goods on credit, would necessarily cause a loss of credit, and, if false, is actionable *per se.*

4. The sense or meaning of such a statement, if true, is not changed into a charge of fraud by the facts that the person therein referred to is a merchant, in the habit of dealing upon credit with the firms to whom the statement is sent; that the person sending the statement intended to injure the credit of said merchant with said firms; and that he accomplished his purpose.

5. The question whether an intimation that a merchant is in failing circumstances or unworthy of credit is contained in the words, "In time of peace, prepare for war," used in connection with a true statement, sent to firms from whom the merchant is in the habit of purchasing goods on credit, that said merchant has conveyed certain real estate to a woman bearing the same surname for $5,000, is for the jury.

6. Where the defendant in a libel suit is entitled to an instruction that the alleged libelous words, as set forth in some of the counts of the declaration, are not susceptible of the construction alleged in the innuendo, but fails to ask that such instruction be given, except by a request which applies equally to all of the counts, and does not assign error upon language in the general charge upon the subject which made it possible for the jury to find the defendant guilty upon all of the counts,

and his counsel fails to make the point in his brief that the court erred in using such language, a general verdict of guilty, which is sustainable under the *good* counts, will not .be set aside.

7. A letter sent by the defendant to one of the firms to whom the alleged libelous statement had been sent, dated·about the time of the sending of the same, informing said firm that the firm of which the defendant was a member would withhold their patronage from any house ·or firm, etc., which might thereafter accept less than the full amount of their claim from any customer in the city where the plaintiff and defendant resided, except it should be from an assignee or a court of equity, and for liquidation, is admissible as tending to indicate malice, and show a motive for injuring the credit of the plaintiff.

8. Evidence offered by the defendant to show' that the conveyance to plaintiff's wife was without consideration was excluded, the court holding that the truth of the alleged libel was not admissible, even in mitigation of damages, unless pleaded, and that, not being pleaded to the extent of a complete denial of the charge if interpreted in accordance with the innuendo, the plea was inadequate in case of such interpretation, and would not justify the admission of the proposed evidence. No effort was made to show that the alleged fact sought to be established by the rejected evidence was known to the defendant before sending the statement, nor was the court informed that it was so known. And it is held that such fact would be immaterial unless known to the defendant, and that, as the Court cannot say from the record that the evidence was material, familiar rules require that the judgment should not be reversed for its exclusion, though it might have been admissible had a proper foundation for it been laid.

9. The testimony of the plaintiff that he never heard of any report that he was heavily indebted at three or four banks at rates of interest of from 8 to 10 per cent. was offered to negative the statement that it was so reported. And it is held that there was nothing in the testimony tending to show that the plaintiff would have been likely to hear such report, if made; that the testimony was negative, and should not have been admitted; that the law presumed the charge false, and the burden was upon the defendant to show the truth of the statement as made; and that, as the record fails to show that the plaintiff was reported as stated, the testimony of the plaintiff was harmless, and its admission error without prejudice

10. Counsel for the defendant contended that the only damages

recoverable were special, and that the same had been neither alleged nor proved; but the court allowed the jury to bring in general damages, upon the theory that the words were actionable *per se*. And it is held that no error was committed in so doing.

Error to Ingham. (Person, J.) Argued June 29, 1894. Decided September 25, 1894.

Case for libel. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Thomas E. Barkworth* and *Arthur D. Prosser*, for appellant.

*Smith, Lee & Day*, for plaintiff.

HOOKER, J. The parties to this action are rival merchants in the city of Lansing. It is alleged by the plaintiff that in October, 1889, the defendant sent to various firms in other cities, with whom the plaintiff had business relations, clippings from a Lansing paper, showing real-estate transfers, including between ink lines, placed there by himself, the following: "Benjamin F. Simons to Adeline A. Simons, lots 1, 2, and 3, block 150, Lansing, $5,000." This clipping was attached to a half sheet of paper, on which was written the following, viz. (after the above quotation from the clipping, the words, "his wife," and: "The real estate transferred and marked in slip is estimated to be worth at least $10,000; other real estate heavily mortgaged; reported to be heavily indebted to three or four banks, for borrowed money, at a high rate of interest, say 8 to 10 per cent. per annum, and payable every 60 days." In one instance it is claimed that to a clipping of the kind mentioned, inclosed by ink lines as aforesaid, the following pencil- writing was appended, viz.: "In time of peace, prepare for war."

The declaration contained several counts charging that

communications similar to that first above described were
sent to different persons, and one count upon the last-
described writing; each count containing by way of induce-
ment the statement that the plaintiff was a merchant,
dependent for his living upon such business; that he had
always conducted himself with fairness and punctuality
towards his creditors, and until then had never been sus-
pected of bankruptcy, insolvency, or any fraudulent inten-
tion, and had always been, and then was, in good circum-
stances, credit, and esteem; knowing which, the defendant,
with the intention of injuring the plaintiff in his good
business name and credit, and in his business, and to cause
him to be reputed as worthy of no credit, and to injure
him and his said credit with the several persons to whom
said communications were sent, published the writings
counted upon.    By way of innuendo, each count alleged
the following, in substance, viz.:  "Thereby the said de-
fendant, by the said clipping and writing, letter partly
printed and partly written, as aforesaid, meaning and
intending to charge and cause the said [person to whom
the same was sent] to understand, believe, and be informed
that the said plaintiff was fraudulently conveying his prop-
erty to his wife, and was insolvent, and in failing circum-
stances, and unreliable, and unworthy of credit."    The
counts respectively allege special damage, by stating that
the creditors of plaintiff and others, and especially those
to whom the communications were sent (naming them),
have refused to have further dealings with the plaintiff, or
to give him further credit, and that he has, by reason
thereof, been prevented from obtaining credit, and from
replenishing his stock and maintaining his trade, which
has suffered therefrom, to his loss of profits, and injury.

It is contended by the defendant's counsel that the
words declared upon are not actionable *per se;* that they
were declared upon without any inducement which would

make the innuendo applicable, and that the natural meaning of the words must therefore govern as to the sense in which they were published; but that, even if it were competent for the jury to ascribe a meaning different from the natural meaning of the words, it was unnecessary for a plea of justification to be broader than the charge in the declaration.

The words in the several counts, standing alone, are unambiguous, and must therefore be construed in their ordinary sense, in the light of such allegations of the circumstances surrounding the transaction as the declaration sets forth. Most of this language admits of but one meaning when so construed. It is that this plaintiff has conveyed $10,000 worth of real estate to his wife for $5,000; his other real estate is mortgaged; and that he is heavily indebted to banks, upon which indebtedness he is paying a high rate of interest mentioned. If this has no significance further than a personal one, it is not libelous *per se.* If, however, it can be said to apply to the business of the plaintiff, it may be.

The declaration, by way of inducément, states that plaintiff was in the habit of purchasing goods, with which to maintain his stock, of certain firms, naming them; that defendant, with the intention and for the purpose of injuring plaintiff's credit with said firms, and preventing his purchase of goods from them upon credit, made certain statements concerning his indebtedness, and incumbrances upon his property, and the transfer of property to his wife upon an ostensible consideration of one-half its value. The innuendo charges defendant with meaning that plaintiff was fraudulently disposing of his property, was in failing circumstances, and unworthy of credit. Counsel for defendant assert that this language is not libelous *per se,* and it is possible that, standing alone, it might not be, as in that

case it might have to be construed as written concerning the person merely; and there is nothing in the act of conveying property to a wife, with or without consideration, or in securing creditors, or borrowing money at a lawful rate of interest, that can be said to be reprehensible or disgraceful, or that necessarily tends to beget ridicule or contempt in the sense essential to a libel. But the declaration charges this publication in connection with other facts, which, if true, authorize the conclusion that it was made in connection with the business of the plaintiff. It has been held that it is not actionable to say of traders that they have executed a chattel mortgage. *Newbold v. Bradstreet*, 57 Md. 38. But those familiar with mercantile affairs, or the litigation which they beget, understand that the filing of mortgages, the conveyance of property to relatives, and carrying of large lines of credit at banks invariably provoke distrust and caution, and usually cause a loss of credit, and legal proceedings to collect accounts. So well understood is this that we feel justified in holding that a false statement of the kind set up in this declaration would necessarily cause a loss of credit, and therefore would be actionable *per se* when applied to one alleged to be a trader, in the habit of purchasing upon credit. A case very similar to this is *Newell v. How*, 31 Minn. 235, where the defendant reported of the plaintiff, to his correspondent, as follows:

"His assets, consisting of merchandise, show cases, tools, book-accounts, as per his own guess, is about $1,800. His indebtedness is, as far as I know, about the same amount. He may owe more. I speak of what I know. $1,300 is to merchants like you, and $500 a demand note. If any one of his creditors should crowd him, the demand would be pushed. We would advise a caution on your part in selling, and a prompt payment of matured indebtedness."

This was held libelous *per se*, within the rule that in

those callings in which, ordinarily, credit is essential to their successful prosecution, language which imputes to one in any such calling a want of credit or responsibility is actionable *per se*. *Read v. Hudson*, 1 Ld. Raym. 610; *Davis v. Lewis*, 7 Term R. 17; *Dobson v. Thornistone*, 3 Mod. 112; *Chapman v. Lamphire*, 3 Id. 155; *Sewall v. Catlin*, 3 Wend. 291; *Ostrom v. Calkins*, 5 Id. 263; *Mott v. Comstock*, 7 Cow. 654; *Lewis v. Hawley*, 2 Day, 495; *Whittington v. Gladwin*, 5 Barn. & C. 180; *Southam v. Allen*, T. Raym. 231; *Phillips v. Hoefer*, 1 Penn. St. 62.

But this is not the end of the question in this case. Plaintiff ascribed a certain meaning to the words used, beyond their ordinary import, which he sets forth in the innuendo, *i. e.*, substantially a design to defeat or defraud his creditors by conveying property to his wife, etc., and that he was unworthy of credit, and in failing circumstances. The words used are not in themselves ambiguous, and, unless they are to be taken in some other than their ordinary sense, they cannot legitimately be construed to express the meaning alleged in the innuendo. To ascertain this, we must examine the facts alleged in the declaration, and see if these words, read in the light of such facts, are susceptible of the construction claimed. These circumstances have been detailed as describing plaintiff's business and the fact of his dealing upon credit with the persons to whom the information was sent, to injure which, and to cause the repute and credit of plaintiff and his said business to be injured and degraded, the writing was published. The declaration also alleges that it had the intended effect. We can understand how words may be used and understood in a different, and even opposite, sense from what they naturally and ordinarily import, as where used ironically, or in the nature of slang, or as a quotation having a well understood significance, or where they are used in cipher; but in all such cases it is neces-

sary that the declaration should allege facts which, if proved, will enable a court to say that these words, interpreted in the light of them, may reasonably be held to bear the construction claimed, leaving to the jury the truth or falsity of the allegations upon which the alleged meaning depends, as well as the question of the meaning. It is not enough for the pleader to allege that the language meant a certain thing. The innuendo cannot enlarge the language complained of, except as it is supported by the inducement. It must be the circumstances surrounding the case, not the intention of the defendant, that modifies the language. A declaration that complained that a defendant had said of the plaintiff (a woman) that she was chaste, followed by an innuendo to the effect that he thereby meant that she was unchaste, would not warrant a court in leaving it to the jury to say what was meant. But if, by way of inducement, it was alleged that the parties were enemies, and that in a conversation in which the defendant was speaking in a derogatory manner of the plaintiff (giving his statements) he had said in an ironical manner and tone that she was chaste, following it with the innuendo, it would be competent for the court to leave the question to the jury whether the language used would not be so meant and understood,—*i. e.*, whether that would not be the common and ordinary understanding of the language when used in that way and under such circumstances. The innuendo would not, in such case, enlarge the words, or alter the sense in which they were used, except by reference to the inducement, which would support it, and which would be susceptible of proof and contradiction by evidence. An issue can never be raised upon the truth of an innuendo. *Fry v. Bennett,* 5 Sandf. 54; *Com. v. Snelling,* 15 Pick. 335; *Taylor v. Kneeland,* 1 Doug. 67.

So we return to the question, do the words, read in the

light of the alleged circumstances under which they were published, sustain the innuendo? For the purpose of this discussion we must assume the statements of the writing to be true as to the literal meaning of the words,—*i. e.,* that the plaintiff did make the conveyance, and was indebted and mortgaged, as therein stated. These things being true, can it be said that the sense or meaning of the statement is changed into a charge of fraud by the facts that the plaintiff was a merchant, who was in the habit of dealing upon credit with the persons to whom the writings were sent, that the defendant intended to injure his credit with such persons, and that it had that effect? To be consistent with what has been said of the effect of the acts alleged in the writing upon the mind of the average creditor, we must concede that the inference from such acts would probably be that the debtor was to a greater or less extent embarrassed, and perhaps that he was placing his property in the hands of his wife with fraudulent design, though the latter, at least, is not a necessary inference. There is nothing better settled in this State than the proposition that the truth of the publication is a complete defense to the action of libel. Here, then, the defendant has simply told the truth without comment of any kind. Shall we say that, because of the inferences which naturally follow, the meaning of the language should be extended to include the inferences? If so, it logically follows that the truth of the publication is not a complete defense in cases where inferences naturally follow the statement of certain facts. Would the character of the publication depend upon the expectation by defendant that the inference would be drawn? And would the failure of the person addressed to draw the inference relieve the defendant from liability? We get into deep water when we depart from the rule that actions for slander and libel do not lie upon inferences (Townsh. Sland. & L. §

133), though we must recognize a distinction between inferences which are the natural result of implications contained in the language of the publication—which may, in a sense, render it ambiguous, and justify a construction at variance with the strict meaning of the words as ordinarily used—and inferences drawn only from the facts themselves.    In the former case the action may lie,—not because of the inference, but by reason of the implication; in the latter it will not.    Applying this rule to the case before us, we feel constrained to say that these words are not susceptible of the construction alleged in the innuendo.

From what has been said, the third count should be excepted.    In that count the charge consisted of the real-estate transfer, followed by the words, "In time of peace, prepare for war."    The statement of the paper was true as to the transfer.    If the writing was libelous, it must be by reason of the use of the words, "In time of peace, prepare for war."    The natural meaning of this will depend largely on the circumstances under which the words were written, and, unless we can say that they do not contain an intimation that the plaintiff was in failing circumstances or unworthy of credit, it was proper to leave this question to the jury.    *Ewing v. Ainger,* 96 Mich. 587.    It is patent that the marking and sending of the real-estate transfer to plaintiff's creditor may have been, and probably was, intended to apprise such creditor of the fact that his debtor had conveyed the property.    The advice, in connection with it, may reasonably be thought to imply that the creditor had better look after his interests in that direction while it was yet a time when he might secure them; that delay in that particular case might be dangerous.    If the jury so found, the words were actionable *per se.*    If they could not so find, they were not actionable, being fully justified by the proof of the truth of the conveyance.

From what has been said, it is plain that the jury might have been directed that some of the counts did not contain language that could be construed in accordance with the innuendo. Such instruction was not asked, except as the request applied equally to the other count. Error might have been assigned upon the language of the charge upon this subject, inasmuch as the court expressed a different view to the jury from that contained herein, rendering it possible that they found defendant guilty upon all of the counts. But we find no assignment of error upon this language, nor is the point made in the brief of counsel that it was error. Inasmuch as there is one count which will sustain the verdict, we cannot reverse the cause upon the ground that the jury were allowed to find a verdict upon a declaration containing three bad ones.

Counsel for plaintiff offered in evidence a letter sent by defendant to one of the firms to whom the alleged libelous letter was sent. It is dated about the time that the publications were made, and was offered to show malice. It reads as follows:

"LANSING, MICH., October 17, 1889.
"Messrs. HILTON, HUGHES & DENNING,
"New York.

"*Dear Sirs:* We feel justified in stating our position regarding the settlement of insolvent accounts in our line of trade, viz., we will withhold our patronage from any house or firm, importer, jobber, or manufacturer who may hereafter accept less than the full amount of their claim from any customer in Lansing, except it be from an assignee or a court of equity, and for liquidation.
"Respectfully yours,
"BURNHAM & CO."

This was admissible under the rule that other publications may be shown to indicate malice. It tended to show a motive for injuring plaintiff's credit. *Fowler v. Gilbert,* 38 Mich. 292.

Several questions arise upon evidence offered in mitigation of damages. The plea was the general issue, accompanied by a notice that the several statements of fact were true. It did not go to the extent of justifying them in the sense of the innuendo; hence attempts to prove that the conveyance to the wife was without consideration by examination of the plaintiff were excluded, the court holding, in conformity to some of the authorities, that the truth is not admissible, even in mitigation of damages, unless pleaded, and that, not being pleaded to the extent of a complete denial of the charge if interpreted in accordance with the innuendo, the plea was inadequate in case of such interpretation, and would not justify the admission of the proof. In the case of *Huson v. Dale,* 19 Mich. 17, the late Mr. Justice CHRISTIANCY discussed this question, and, with the concurrence of the full bench, settled the law for this State, holding that anything tending to show an honest belief in the substance of the publication when made was admissible for the purpose of disproving malice and to mitigate damages, though it tended to prove the truth of the charge It would, however, be immaterial unless known to the defendant, as it could not have influenced his belief unless he knew of the fact. The same may be said of the questions pertaining to the value of the Williamston property, the effect of freighting business upon Lake Michigan, and overdue drafts at the bank. No effort appears to have been made to show that any of these matters came to the knowledge of the defendant before the publication, nor was the court informed that such was the fact. The court might have supposed that they were offered upon the theory that the actual condition of the plaintiff might have been such as to render the damage less serious than it would have been had he not actually been in embarrassed circumstances. Had he been informed that such evidence would show a reason for such belief by

the defendant, he might properly have asked for proof that defendant knew these facts at the time of the publication, before admitting the evidence offered. The following colloquy fails to indicate that this evidence was offered or rejected upon the understanding that it would justify or excuse defendant for a belief existing at the time of the publication:

" Q. What consideration did Mrs. Simons pay for the transfer of those lots? (Objected to as incompetent.)

" The Court: I will hear you on that, Mr. Kilbourne.

" Mr. Cahill: It seems to me that it is always competent to show, the deed being in evidence, the consideration of it. The amount stated in the deed, of course, is not conclusive upon anybody, not even the parties; certainly it is not conclusive on third parties. That is the ground.

" The Court: I will sustain the objection.

" Mr. Cahill: I don't understand. I understand the point made against it.

" The Court: The point made against it was that your notice is not notice of full justification. Furthermore, the notice was a notice that you would show that such deed was made. There isn't any notice nor claim that it was made fraudulently in your notice.

" Mr. Cahill: Then I understand the ruling of the court is upon the idea that the notice does not state that we will prove that the consideration was fraudulent in the deed?

" The Court: You don't make any claim of that outside, as I understand it. Furthermore, you claim to justify in the sense attributed in the innuendo to the words, of course. I don't see what use you could make of it if you had it in evidence,—what you are aiming at. I can't see what use you would make of the evidence if you had it under your notice.

" Mr. Cahill: We claim that we are entitled to just the exact facts in regard to the execution of that deed, and that we are not bound, under the declaration and pleadings in this case, to state in our notice and assume the burden of proving that this was a fraudulent deed. We don't know whether it was or not, but we think we are entitled to learn from this plaintiff what the fact was. Now, I think the position your honor has taken would be perhaps correct if we were attempting to show as a

part of our defense, and by other witnesses than the plaintiff, that there was no consideration for this deed, and that it was fraudulent. But when the plaintiff himself, whose general character, at least, is at stake, when he brings an action for libel, and is on the stand as a witness, and testifies that he made a deed to his wife for certain property, that we are entitled to ask him, as bearing upon the good faith upon which he seeks to recover damages in this suit, to state whether that deed was given in fact for such consideration as upon its face it purports to; and, if it goes no further to aid the defendant, it certainly mitigates the charge that can be made against him, and must mitigate the damages that can be recovered against him. (Objection sustained. Exception by Mr. Cahill.)"

Counsel did not say to the court that it was for such purpose, or that defendant had such knowledge, and he seems to have conceded that the ruling of the court would have been right had the question arisen upon an offer of proof by way of defense, but he claimed that it was wrong, inasmuch as the question arose upon cross-examination of the plaintiff. It is but fair to counsel to add that he does not claim here that defendant knew or understood that the facts sought to be elicited by these questions existed. So far as we have been able to learn, the record is silent upon the subject. As we cannot say from the record that this evidence was material, familiar rules require that the judgment should not be reversed for its exclusion, though it might have been admissible had a proper foundation for it been laid.

Error is assigned upon the admission of the testimony of the plaintiff that he never heard it reported that he was heavily indebted to three or four banks at rates of interest from 8 to 10 per cent. This was offered to negative the statement that it was so reported. There was nothing in the testimony tending to show that the plaintiff would have been likely to hear such reports, if any were made. Perhaps he would have been less likely to

hear them than most citizens of the place. The testimony was negative, and should not have been admitted. It did not furnish a presumption that such reports were not made, which was one of the issues in the case. But the law presumed the charge false, and the burden was upon the defendant to show the truth of the statement as made. *Edwards v. Chandler*, 14 Mich. 476. Our attention is not called to evidence which showed that the plaintiff was reported to be indebted to three or four banks at rates of interest from 8 to 10 per cent. Nor have we been able to find such. It appears that he paid 8 per cent. at one or more banks. Defendant's testimony on the subject is as follows:

"I heard that he was heavily indebted at the banks by several. One was Mr. Merrifield, and W. A. Parsons, my bookkeeper. Well, I can't call to mind any one else now. I think that Mr. Parsons told me that Mr. Simons had about $8,000 or $10,000 in notes at the banks. He is the one that was bookkeeper for Mr. Simons about a year ago. Mr. Merrifield said he was a heavy borrower. I should not think that a man like Vanderbilt, owing $10,000, would be heavily indebted; no, sir. Yes, I remember I asked Mr. Bradley, and he told me that Mr. Simons had a note there for $1,000. Well, I think I gathered from Mr. Bradley that Mr. Simons was a heavy borrower at the other banks. I understood the term 'heavy borrower.' I did not inquire at any other banks."

It stood, therefore, upon the presumption that the statement was false, and the testimony of the plaintiff was harmless.

But one question remains, and that relates to the subject of damages. Counsel for the defendant argue that the only damages recoverable were special, which they assert to have been neither alleged nor proved. The court allowed the jury to bring in general damages, upon the theory that the words were actionable *per se*. We think no error was committed in so doing.

It is claimed further that the court permitted the jury to "find any sum which, in their judgment, would compensate him for the natural or probable consequences of the defamatory words, including injury to the feelings of the plaintiff, and practically left it open to the jury to give such exemplary damages as their prejudices might incline them to." Reference to the charge shows that he instructed the jury as follows, viz.:

" ' If the jury reach the question of damages, they are instructed that such damage can be given only by way of compensation to the plaintiff for injuries actually suffered by reason of the false publication made against him. The jury cannot lawfully give damages by way of punishing the defendant.'

"And that is true. Damages are not given in this State in civil actions on the theory of punishment, but they are given on the theory of compensation. When a matter is libelous upon its face, as the lawyers have expressed it here before you, and as they commonly speak of it, '*per se*,'—when that is the situation,—the law presumes there was damage. General damages are those which the law will presume to be natural or probable consequences of the defamatory words. They arise by inference of law, and need not be proved by the evidence. Even where no evidence is offered as to damages, the jury are not in duty bound to give nominal damages only; they may read the libel, and give such damages as will compensate the plaintiff for such defamation. That I understand to be the rule of law. Inasmuch as the law says that publication charging a man with insolvency must naturally affect his credit, therefore it must naturally cause him some damages, and the law implies and infers what the damages would be; that is, that there would be damage. Under such circumstances the jury must take into consideration the entire case as shown before them relating to the matter, and determine from their good judgment as to these general damages what would recompense the plaintiff for the natural consequences of the libel proven before them under the circumstances. That is the way the jury get at it. Not fanciful damages, not wild damages nor speculative damages, nor damages by way of revenge or punishment or anything of that kind, but the

jury should determine soberly and calmly what would be the compensation for the natural effect of the language used if it is libelous.

"Injuries to feelings of parties caused by the wrong (and injuries to feelings may be caused by a good many wrongs) that become actual damages, and the jury have a right, in a case where the publication is libelous on its face, in taking into consideration the general damages, which means such damages as generally, ordinarily, naturally flow from the cause shown in evidence,—the jury, I say, in taking into consideration such general damages, may also take into consideration whether the general, natural tendency would be an injury to the feelings in this case, and if they find that the natural consequences of any libel or slander proven before them—that is, that the general consequences—would be an injury to the feelings, they may take that into consideration, and allow such damages for it as in their judgment, under the circumstances, would be compensatory, not fanciful, damages, nor wild nor reckless damages.

"Outside of these matters, there are certain things which come up in cases which at times tend to increase the damages or tend to diminish the damages. Now, for instance, if an act is done which causes an injury, and it is done, we will say, negligently, but not with any actual intent to harm a man, the party who commits the act will not be liable. So a libel may be published without any intention to harm a man, and yet it would be a libel, because a libel is judged by its natural consequences. That is what makes the thing libel. If it was done without any actual ill will, any actual malevolence, the damages would not be as much as if it was done through a mean motive, an actual hatred, personal ill will, deliberate intent to maliciously injure another man. So the question of 'malice may always be taken into consideration in determining the amount of damages which should be awarded.

"On the other hand, some things may be taken into consideration in mitigating damages. If a party who published a libel actually in good faith, doing what he thought was right under the circumstances, acting honestly, —and a libel might be published in that way,—the jury should take that good faith into consideration in mitigating, lessening, or diminishing the damages that would be awarded, and in some case they might consider that such good faith should go far enough to reduce the damages to

a mere nominal sum. Evidence of both kinds has been offered in this case. The plaintiff has offered evidence in the case in the shape of other publications, in the character of this publication, has urged the matters to you, claiming that they show an actual malevolence, ill will, hatred, and desire to do a personal injury to the party libeled on the part of the defendant. If that is true, you have a right to take it into consideration in fixing the damages, if you get to damages, which you will award against him. On the other hand, the defendant has offered evidence here tending to show that he had no ill will; that it was not from hatred; that it was done in good faith, as he supposed his rights were. If it is true, you are to take that into consideration in mitigating and lessening damages; all this, of course, being important, if you should come to the question of damages,—a matter upon which I have no opinion."

We think this in accord with the law of this State.

The judgment of the circuit court will be affirmed.

McGRATH, C. J., LONG and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.