CLAIR *v.* BATTLE CREEK JOURNAL CO.

1. LIBEL AND SLANDER—JUSTIFICATION—PRIVILEGE—NEGLIGENCE —NEWSPAPERS.

In an action for libel, defendant, a newspaper, was not privileged on the ground that it made inquiry before publishing the objectionable article in which plaintiff was charged with murder and marital infidelity; it appearing that inquiry was made of the local police officials who knew nothing about the facts.

2. SAME.

The article was actionable *per se.*

3. SAME—DAMAGES—NEW TRIAL—EXCESSIVE VERDICT.
The court, on appeal, will not set aside a verdict on the ground
that it was excessive unless satisfied that the result was
reached as a consequence of gross error, passion, bias, or cor-
ruption.

4. SAME—WORDS LIBELOUS PER SE.
General damages for injury to plaintiff's reputation, feelings,
etc., are allowable without proof of special injury from
words libelous *per se*, and as bearing on the amount the reck-
lessness or care of defendant in publishing the statements
complained of was a proper subject of consideration by the
jury.

5. SAME—GOOD FAITH—MITIGATION OF DAMAGES.
Defendant's alleged good faith did not affect plaintiff's right to
compensation for injury to feelings and reputation.

6. SAME.
And a verdict of $1,500 was not so excessive as to require the
granting of a new trial.

Error to Calhoun; North, J.  Submitted January 24,
1912.  (Docket No. 45.)  Decided February 10, 1912.

Case by Myrtle Clair against the Battle Creek Journal
Company for libel.  Judgment for plaintiff.  Defendant
brings error.  Affirmed.

*D. C. Salisbury* and *Burritt Hamilton*, for appellant.

*James M. Powers* and *Palmer & Palmer*, for ap-
pellee.

STONE, J.  This is an action on the case for libel, in
which the plaintiff recovered a verdict for $1,500, of
which $500 was for damages to the plaintiff's feelings,
and $1,000 for damages to plaintiff's reputation.

There was a motion by defendant for a new trial, one
ground of which was that the verdict was excessive.  The
motion was denied by the circuit judge, who stated in his
reasons filed that in his opinion the verdict was not ex-
cessive in amount.  This refusal was duly excepted to by
the defendant.  Upon a judgment having been entered
for the plaintiff, the defendant has brought error.

The only assignment of error urged in this court by defendant in its brief and in the oral argument of counsel is:

"That the trial court erred in denying defendant's motion for a new trial, and in holding that the verdict rendered by the jury was not excessive in amount."

The article published by the defendant in the Battle Creek Journal of December 1, 1908, and complained of, is as follows:

"Marshall Murderess.   Had Checkered Career.   Woman Arrested in Los Angeles for Killing Street Car Conductor Known.   Wanted to Marry Him.   Secures a Divorce for That Purpose and Very Much Disappointed.

"The news of a double tragedy in which a former Marshall girl committed a double crime was received here Sunday.   Mrs. Myrtle Clare, aged twenty-six and formerly Miss Myrtle Colby, of Marshall, shot and mortally wounded John L. Lambert, a street car conductor, then killed herself in a rooming house in Los Angeles, Cal., Thanksgiving Day.   Lambert was taken to a hospital where he died.   Miss Colby lived in Marshall about ten years ago.   She came to that city from Springport, and was a rather attractive young woman.   She worked for Chas. A. Kilbourne, who conducted a restaurant in a building now occupied by Jarius Raub, and resided in a West State street building.   From there she went to Jackson.   She was married to Ira Clare of Coldwater, Mich., and a few years ago and soon after the couple went west, where Mr. Clare secured a position with the Los Angeles Ice and Cold Storage Co.   It is said that their married life was not as happy as it might have been and Mrs. Clare became acquainted with Lambert, a married man who had separated from his wife.   Mrs. Clare applied for a divorce from Clare, intending to marry Lambert.   Her sentiments were not reciprocated very cordially by the Street Car Conductor, and it is believed the deed was inspired by desperation over the marital complications.   It is said Lambert had a divorce, and that Mrs. Clare could not secure one, hence the crime."

The defendant gave notice, under its plea of the general issue, that at the time of the publishing of said article it was its duty to gather and publish items of news and in-

terest, and that in the regular course of its business said news item was clipped and taken from an article appearing in the Marshall Chronicle, a newspaper published at the county seat of Calhoun county, the then home of said plaintiff, as other articles are clipped from other papers of said defendant's exchange list throughout the State, in its regular course of business; and that said defendant published the same in good faith, without malice toward the plaintiff or any other person, and in pursuance of a duty owing to the public at large; that the plaintiff did not, before bringing suit, give notice to the defendant to publish a retraction, and did not allow the defendant a reasonable time to make such retraction, and make such amends as were reasonable under the circumstances of the case.

It appeared upon the trial that similar articles had been published in a California newspaper and in six other Michigan newspapers, including the Marshall Daily Chronicle. It also appeared that the article published by the defendant differed in many respects from the article published by the Marshall paper, especially in that the article published by the defendant gave correctly the age of the plaintiff, and correctly stated that plaintiff came from Springport. No retraction was ever demanded by the plaintiff, and defendant's attention was not called to the matter until a year after the publication, when this suit was commenced. The plaintiff spells her name "Clair" and never went under the name of "Clare." She is the divorced wife of Marshall A. Clair, and never knew any such person as Ira Clare. She was never employed by, and never knew, Chas. A. Kilbourne. Her maiden name was Myrtle Colby. She was born in Springport, Mich., and resided there until she reached the age of 17 years. She then went to Marshall, where she remained about one year. She afterwards resided in Jackson, Detroit, Battle Creek, and Coldwater, in this State. At the last-named place, she was married to Marshall A. Clair in February, 1907, and the same spring they moved to Monrovia, Cal., where they lived until

about July 15, 1907, when they separated, and plaintiff's husband returned to Michigan. In September, 1907, she went to Los Angeles, Cal., where she worked in a laundry until about the 1st of April, 1908, when she went to Tonopah, Nev., where she worked until about the 1st of August, 1908, when she went to Seattle, Wash., where she had resided with her mother and stepfather down to the time of the trial. Plaintiff secured a divorce from her husband at Seattle, Wash., in January, 1910, on the grounds of nonsupport and desertion. At the time of the publication complained of, plaintiff was at her stepfather's ranch near Aberdeen, Wash.; she had been away from Los Angeles upwards of seven months. During the greater part of the time since leaving Springport, the place of her birth, she has been a wage-earner in various industrial pursuits, principally in laundries.

The plaintiff testified that she intended to make Seattle, Wash., her permanent home. She received a clipping containing the article complained of; it was sent to her by mail. She received letters from friends in Michigan and Wisconsin, relating to the article. She testified:

" My feelings were somewhat shattered when I read this article. At that time, I was visiting at my stepfather's ranch, and I told my friends and acquaintances about it, and showed them the clipping. It wasn't the article I cared so much about, as it was the imputation that I had committed a crime. * * * I was affected in my feelings upon receiving those letters and the information from the public of this article complained of, of course. I could not state just exactly how I felt. I was at first very much surprised, and then, of course, I felt that I never would care to come back here while it was talked about, and while it was charged to me."

She testified that she never knew anybody in Los Angeles by the name of John Lambert, a street car conductor.

The article in question charged the plaintiff (if she was the person intended, which was a question for the jury), not only with the heinous crime of murder, but that she

became acquainted with Lambert, a married man who had separated from his wife; and that plaintiff applied for a divorce from her husband, intending to marry Lambert. Other witnesses testified that they read the article in the Battle Creek Journal, and that they discussed it and believed it, and that they believed that it referred to the plaintiff. The issue containing the article complained of had a circulation of 2,279 copies, principally in Calhoun county. A few copies went into adjoining counties; and there was a limited exchange of newspapers throughout the State of Michigan. It must be conceded that the words complained of are actionable *per se.*

Counsel for defendant claim that the publication was an honest mistake, made in an honest attempt to enlighten the public, and that in such a case damages should be reduced to the minimum, and they cite the cases of *Bailey* v. *Publishing Co.*, 40 Mich. 251; *Finnegan* v. *Free Press Co.*, 78 Mich. 659 (44 N. W. 585).

In view of this reference to "an honest attempt to enlighten the public," we cannot overlook the testimony of the city reporter of the defendant, who furnished the article in question, which in the publication was not credited to any other paper. This city reporter testified as follows:

"We try to print the truth. I don't know as I devoted two or three hours to the investigation of the truth of this item. I should judge half an hour, possibly more. I remember I made as complete an inquiry in regard to the item as I could through the local police officials here. * * * I went in person to the police department, and my impression is I saw the desk sergeant; he said he knew nothing about it, and I inquired of the chief, too, and he did not know anything about it. And with the statement that they knew nothing about it, well, it was published."

In these days of telegraph and telephone communication, the inquiry might well have gone further.

It is admitted that the law presumes damages where the words are actionable *per se;* and that the amount of these damages rests primarily in the sound discretion of

the jury, under a proper charge from the court. No error is assigned upon the charge. The jury were instructed that the damages recoverable were compensatory only, and that no exemplary or punitory damages were claimed or recoverable in the suit.

Although there is no fixed measure in dollars, applicable in such a suit, since the damages must vary according to the circumstances of each case, yet the damages awarded ought to be reasonably proportionate to the injury done; and hence a verdict is open to inspection and revision by the court, for the purpose of determining whether the jury were guided by a sound discretion in fixing damages.

The jury were charged that under the pleadings and evidence the plaintiff was entitled to recover actual damages for such injury to her feelings and reputation as was shown by the evidence. This language, while criticised by counsel, is not made the basis of any assignment of error. In the connection in which it was used, it was not erroneous. A reviewing court should not set aside a verdict on the ground of excessive damages, unless it is satisfied that it is the result of gross error, passion, bias, corruption or prejudice. 25 Cyc. p. 557, and cases cited.

Where the words of an alleged libel are actionable *per se*, the jury may be allowed to bring in general damages, though no special damages have been alleged or proved. *Simons* v. *Burnham*, 102 Mich. 189 (60 N. W. 476).

To the point that the defendant is liable for all actual damages sustained, including injury to the feelings and reputation of the person libeled, and as bearing on this element of damages, the recklessness, carelessness, or negligence of its employés in respect to the publication may be considered by the jury. See *Long* v. *Printing Co.*, 107 Mich. 207 (65 N. W. 108).

Without proof of injury from the words, the plaintiff was entitled to recover the actual damages to her reputation and feelings which the law presumes will flow from the commission of the act. And good faith in the publication of a libelous charge in no way affects the defend-

ant's liability to compensate the plaintiff for her actual damages to reputation or feelings. *Schattler* v. *Daily Herald Co.*, 162 Mich. 115 (127 N. W. 42).

In this case the plaintiff, a young woman of good character, without justification, was paraded in a sensationally composed newspaper article as a "murderess," her chastity at least called in question, and illicit love attributed as the motive for her crime. We cannot say that the damages were excessive.

We find no reversible error in the record, and the judgment of the circuit court is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.