Frank G. Anderson, of Oklahoma City, Okl. (Herbert M. Peck, Robert M. Rainey, Streeter B. Flynn, and George M. Green, all of Oklahoma City, Okl., and W. S. Hamilton and J. I. Howard, both of Pawhuska, Okl., on the brief), for appellant.

A. B. Campbell, of Pawhuska, Okl. (A. S. Sands, of Pawhuska, Okl., and W. I. Williams and R. L. Davidson, both of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

The appellee, plaintiff in the court below, sued the appellant, defendant in the court below, to recover damages in an action for libel growing out of the publication of an article in the Oklahoma Times published by the appellant in the city of Oklahoma City on March 4, 1932, and by a jury was awarded damages in the sum of $5,000, upon which a judgment was entered. The defendant appeals.

The article in question reads as follows:

"Oklahoma City Times,
"Friday, March 4, 1932.

(Page 5, column 5.)

"Lawyer Held on Forgery Charge.

"Bartlesville, March 4—(AP)—E. A. Threadgill, Pawhuska, attorney, and Dora Givens were held in jail here Friday on charges of forgery. County officers charged they forged the name of Cecilia Bigheart Selph, incompetent Indian, on checks for $40 cashed at a local grocery."

The complaint is in the usual form, alleging the publication, including the time, place, and manner, together with its falsity, and at the end appears the following language:

"That by means of said publication, and the circulation of said false report, the plaintiff has been greatly injured and damaged in her reputation, business and standing in the community, and in Oklahoma, to her damage in the sum of $25,000.00.

"5. That said article so published about this plaintiff as aforesaid was generally circulated throughout the State of Oklahoma, and particularly Osage County and Pawhuska, Oklahoma, and was read by a large number of people in the State of Oklahoma, all to the detriment and damage of this plaintiff.

"Wherefore, plaintiff prays judgment herein against the defendant as damages in the sum of $25,000.00, and for the costs of the action."

The defendant filed an answer admitting the publication and that it was based upon information received from a reliable source, to wit, from the Associated Press, a countrywide newsgathering association, and that it was published without malice; the defendant believing that it contained a fair, true, and accurate statement of the judicial proceedings in one of the courts of the state of Oklahoma. Thereafter a retraction of the statements contained in the article were subsequently published in defendant's paper.

There seems to be no question that the article was in the nature of what is known to the law as libelous per se. In the early case of Pollard v. Lyon, 91 U. S. 225, at page 227, 23 L. Ed. 308, the language of the court is as follows: "Certain words, all admit, are in themselves actionable, because the natural consequence of what they impute to the party is damage, as if they import a charge that the party has been guilty of a criminal offence involving moral turpitude, or that the party is infected with a contagious distemper, or if they are prejudicial in a pecuniary sense to a person in office or to a person engaged as a livelihood in a profession or trade; but in all other cases the party who brings an action for words must show the damage he or she has suffered by the false speaking of the other party."

The first point of appellant is based upon the contention that, because of the fact that the trial court allowed proof to be introduced by the plaintiff of the injury to her feelings, together with embarrassment and humiliation suffered by reason of the publication, such proofs are not within the scope of the complaint, in which respect the trial court committed error; and in point 2 the contention is made that on account of this error the jury awarded excessive damages. These may be discussed together.

It seems to be a well-settled rule that, in case of a false publication which is libelous per se, the one libeled may have general damages without alleging or proving specific injury. New York Evening Post Co. v. Chaloner, 265 F. 204 (C. C. A. 2); Hanson v. Krehbiel, 68 Kan. 670, 75 P. 1041, 64 L. R. A. 790, 104 Am. St. Rep. 422; Shields v.

Booles, 238 Ky. 673, 38 S.W.(2d) 677; Meyerle v. Pioneer Pub. Co., 45 N. D. 568, 178 N. W. 792; Town Topics Pub. Co. v. Collier, 114 App. Div. 191, 99 N. Y. S. 575; Sullivan v. McCafferty, 117 Me. 1, 102 A. 324; Taylor v. Hearst, 107 Cal. 262, 40 P. 392; Fenstermaker v. Tribune Pub. Co., 13 Utah, 532, 45 P. 1097, 35 L. R. A. 611; Clair v. Battle Creek Journal Co., 168 Mich. 467, 134 N. W. 443.

In New York Evening Post Co. v. Chaloner, supra, at page 220 of 265 F., is found the following language: "Certain publications are actionable per se, by which is meant that an action can be maintained against one who published them, and damages may be recovered without proof of actual injury, as injury is presumed. The publication of a charge that a man is an assassin is, if anything can be, libelous per se, without averment or proof of special damage. The gist of an action for libel is the injury which the plaintiff has suffered because of the wrongful publication, and he is entitled to recover damages commensurate with his injury. And in the case of a publication libelous per se a plaintiff is entitled to general damages as compensation for those injuries which the law presumes must naturally and necessarily result from the publication. He recovers under the head of general damages compensation for mental suffering and injury to his feelings and for any injury to his character and reputation."

█ █ Notwithstanding this well-defined rule of law, the appellant contends that, because the appellee elected to specify with particularity the damages which she claims to have suffered, to wit, to "her reputation, business and standing in the community," proofs concerning injury to feelings with corresponding embarrassment and humiliation should have been excluded.

Under the rule laid down, we cannot agree with this contention on the part of counsel. In the first place, the prayer of the complaint in all its phases, when liberally construed, seems to be a prayer for general damages, inasmuch as clause 5 is sufficient in itself to be so construed. In addition, however, there is likewise a well-defined rule of law that without specific averment damages are recoverable where they necessarily and immediately flow from the injuries named. 8 R. C. L. 620; 17 C. J. 1001; County of Bibb v. Ham, 110 Ga. 340, 35 S. E. 656; Titus Hutchinson v. Granger, 13 Vt. 386; Brown v. McNair, 125 Okl. 144, 256 P. 903; Jerome Verde Copper Co. v. Riley, 21 Ariz. 655, 192 P. 429. In the early case of Hutchinson v. Granger,

supra, the thought is expressed in the following language found on page 394 of 13 Vt.: "And the fact that the plaintiff gratuitously undertakes to enumerate some portion of his general damage, and which he might have proved without alleging it, will never preclude his also proving other general damage."

The reason for the rule is plain. It is difficult, if not impossible, to arrive at a conclusion other than that, if a person by a libelous article were injured in reputation, business, and standing in the community, he would necessarily also suffer embarrassment, humiliation, and mental anguish. The latter not only flow directly from the damages alleged, but they are recoverable without allegation or proof.

█ The third point of the appellant is that the verdict of the jury is excessive, in that there was no malice on the part of the defendant in publishing the article. There was no claim in the case at bar for exemplary or punitive damages, and none was submitted to the jury; the court specifically instructing them that their award should include only actual damages to the reputation and business standing in the community but that this might also include humiliation and injury to feelings. The general rule is, that the lack of malice may only be shown in mitigation of exemplary or punitive damages, which are those sometimes given as an example to the public to deter others from committing like offenses. Times Publishing Co. v. Carlisle, 94 F. 762 (C. C. A. 8); Palmer v. Mahin, 120 F. 737 (C. C. A. 8); King v. Patterson, 49 N. J. Law, 417, 9 A. 705, 60 Am. Rep. 622; Cox v. Strickland, 101 Ga. 482, 28 S. E. 655; Garrison v. Sun Printing & Pub. Ass'n, 207 N. Y. 1, 100 N. E. 430, 45 L. R. A. (N. S.) 766, Ann. Cas. 1914C, 288; Dick v. Northern Pac. R. Co., 86 Wash. 211, 150 P. 8, Ann. Cas. 1917A, 638.

In Palmer v. Mahin, supra, Judge Walter H. Sanborn, speaking for the court at page 741, of 120 F., uses the following language, which is typical of the rule adopted by the great majority of the courts: "The unprivileged publication, in writing or print, of a false charge that another is guilty of a crime, or of a false charge which tends to expose another to public hatred or contempt, entitles the person thus defamed to recover of the publisher full compensation in damages for all the injury to his reputation, business, and feelings which the defamatory publication caused. A written or printed article of this character is libelous in itself. From its publication the conclusive presumption of actual damages to its victim, and of legal malice,

that is to say, of 'an act done wrongfully, without legal justification or excuse,' at once arises. The fact that the publisher was without malice in the popular acceptation of that term, that is to say, without ill will, bad motive, hatred, or intent to injure his victim, constitutes no defense to the latter's claim for compensatory damages, and no evidence to mitigate or reduce their amount, because the actual damages to the party libeled are the same whether they are inflicted by the publisher with a good or an evil intent, and the victim is as clearly entitled to full compensation for a wrong inflicted with a laudable motive, or through mistake or inadvertence, as from one perpetrated with a diabolical purpose or intent. The intent or purpose with which such a publication is made is immaterial in the trial of the claim for the actual or compensatory damages which the party injured may seek. It is important only when a claim for exemplary damages is to be considered."

Stress is laid upon an opinion announcing a rule seemingly to the contrary in Layne v. Tribune Co., 146 So. 234, by the Supreme Court of Florida, where an apparent departure is attempted on account of the situation arising in connection with large newsgathering agencies. However, we do not feel that we should deviate from the well-settled rule laid down in the above-selected authorities. The reason for this rule is again apparent in the fact that the publication of a false article, although in good faith, may be as damaging to the person libeled as though it were published with a malicious intent.

The contention is made that the damages are excessive, and in a sense they may seem exceedingly liberal. We do not feel, however, that, inasmuch as the jury was properly instructed as to the basis upon which damages might be awarded, we can substitute our judgment for that of the jury in regard to the measure of damages.

The judgment will be, and is, affirmed.

Circuit Court of Appeals, Tenth Circuit.

Sept. 5, 1933.