LEDSINGER v BURMEISTER

Docket No. 57147. Submitted December 16, 1981, at Detroit.—Decided
March 3, 1982.

Harold E. Ledsinger and his wife, Shirley A. Ledsinger, brought
an action against Clarence Burmeister, alleging several causes
of action resulting from an incident in which Burmeister, a
retail merchant, ejected Harold Ledsinger from Burmeister's
place of business, accompanying this action with various racial
epithets. The plaintiffs' complaint alleged: (1) intentional inflic-
tion of emotional distress, (2) slander, (3) violation of the
Elliott-Larsen Civil Rights Act, (4) invasion of privacy, (5)
violation of the public accommodations law, (6) violation of the
Federal Civil Rights Act, and (7) loss of consortium on the part
of Mrs. Ledsinger. The Oakland Circuit Court, James S. Thor-
burn, J., granted the defendant's motion for summary judg-
ment. Plaintiffs appeal. *Held:*

1. Summary judgment on the claim of intentional infliction of
emotional distress was proper only if the alleged racial slurs
could be classified as not extreme and outrageous as a matter
of law, considered in the context in which they were made. In
this case the alleged remarks could be considered by a trier of

REFERENCES FOR POINTS IN HEADNOTES

[1] 61A Am Jur 2d, Pleading § 231.
[2] 38 Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4, 12, 40.
    Recovery of damages for emotional distress resulting from racial,
      ethnic, or religious abuse or discrimination. 40 ALR3d 1290.
    Libel and slander: statements respecting race, color, or nationality.
      46 ALR2d 1287.
[3] 50 Am Jur 2d, Libel and Slander §§ 71, 72.
[4] 50 Am Jur 2d, Libel and Slander § 137.
[5, 8] 15 Am Jur 2d, Civil Rights §§ 56, 261, 287.
    50 Am Jur 2d, Libel and Slander § 94.
[6] 15 Am Jur 2d, Civil Rights § 261.
[7] 50 Am Jur 2d, Libel and Slander § 6.
    62 Am Jur 2d, Privacy § 5.
[9] 15 Am Jur 2d, Civil Rights § 263.
    20 Am Jur 2d, Courts § 13.
[10] 15 Am Jur 2d, Civil Rights § 286.
[11] 41 Am Jur 2d, Husband and Wife § 455.

fact to be extreme and outrageous. Summary judgment on this count was erroneously granted.

2. Slander requires an actual defamation. Here there was no indication that the defendant's use of the term "nigger" had any meanings or innuendo other than its ordinary use as a slang term referring to a member of the Negro race. Such use does not constitute defamation, and therefore the grant of summary judgment on this count was proper.

3. Plaintiffs' allegations stated a cause of action under the Elliott-Larsen Civil Rights Act in that they stated that the defendant denied Mr. Ledsinger the sale of and equal enjoyment of goods sold at defendant's store on the basis of race. The grant of summary judgment on this count was error.

4. The epithets allegedly used by the defendant did not disclose private facts about Mr. Ledsinger. Plaintiffs stated no cause of action for invasion of privacy. Summary judgment on this count was properly granted.

5. Plaintiffs stated a cause of action under the public accommodations law in the denial of equal accommodation based on race. Summary judgment should not have been granted on this count.

6. Summary judgment was properly granted on the count alleging violation of the Federal Civil Rights Act, as plaintiffs did not allege that the defendant acted under color of state law.

7. Because Harold Ledsinger has stated valid causes of action, Shirley Ledsinger has a viable cause of action for loss of consortium.

Affirmed in part, reversed in part and remanded.

1. JUDGMENTS — SUMMARY JUDGMENTS — COURT RULES.

A motion for summary judgment for failure to state a claim upon which relief may be granted tests the legal basis of the complaint; the factual allegations are taken as true, along with any inferences or conclusions which fairly may be drawn from the facts alleged, and unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover the motion should be denied (GCR 1963, 117.2[1]).

2. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Liability for intentional infliction of emotional distress may be found only where the conduct of the defendant is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community; liability does not

extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

3. SLANDER — DEFAMATION.

A communication is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or to deter others from associating with him.

4. SLANDER — DEFAMATION.

A person making a communication is liable, for purposes of determining whether his language is defamatory, for the meaning that is most natural and is actually fairly accepted under the particular circumstances.

5. CIVIL RIGHTS — PLEADING — SUMMARY JUDGMENTS — STATUTES.

A plaintiff who has alleged that he was denied the sale of goods because of his race and that the defendant made a statement which, if established, would constitute publication of a statement that full and equal enjoyment of the goods sold at the defendant's business establishment would be withheld on the basis of race has stated a cause of action under the Elliott-Larsen Civil Rights Act, and summary judgment in favor of the defendant on the issue is improper (MCL 37.2302; MSA 3.548[302]).

6. CIVIL RIGHTS — ACTIONS — STATUTES.

A person alleging a violation of the Elliott-Larsen Civil Rights Act may bring a civil action for injunctive relief or damages, including compensatory and exemplary damages and reasonable attorney fees (MCL 37.2801, 37.2802; MSA 3.548[801], 3.548[802]).

7. PRIVACY — INVASION OF PRIVACY.

An invasion of privacy claim may be brought for the public disclosure of embarrassing private facts about the plaintiff; such an invasion requires the disclosure of private information that would be highly offensive to a reasonable person and of no legitimate concern to the public; liability will not be imposed for giving publicity to matters that are already of public record or otherwise open to the public eye.

8. PLEADING — PUBLIC ACCOMMODATIONS — SUMMARY JUDGMENTS — STATUTES.

Allegations which allow a fair inference that a defendant denied the plaintiff equal accommodation in defendant's place of business state a claim under the public accommodations law suffi-

cient to withstand a motion for summary judgment (MCL 750.146; MSA 28.343).

9. CIVIL RIGHTS — COURTS — JURISDICTION.

State courts exercise concurrent jurisdiction with federal courts over claimed violations of the federal civil rights statutes.

10. CIVIL RIGHTS — FEDERAL STATUTES.

A plaintiff must show that a claimed deprivation of his civil rights occurred while the defendant acted under color of any statute, ordinance, regulation, custom, or usage of any state or territory in order to state a cause of action for violation of his civil rights under the federal civil rights statute (42 USC 1983).

11. TORTS — LOSS OF CONSORTIUM.

A person may recover damages for loss of consortium caused by injuries wrongfully inflicted upon that person's spouse.

*Walter A. Lucken,* for plaintiffs.

*Fulkerson, Hudson, Moore, Bileti, Pierce & Tennent, P.C.,* for defendant.

Before: N. J. KAUFMAN, P.J., and BASHARA and R. I. COOPER,* JJ.

N. J. KAUFMAN, P.J. Plaintiffs, Harold and Shirley Ledsinger, appeal as of right from the dismissal of their cause of action by way of summary judgment under GCR 1963, 117.2(1).

The facts as alleged in plaintiffs' second amended complaint are not complex. Harold and Shirley Ledsinger are a black husband and wife residing in Pontiac. Defendant is a retail merchant doing business in Troy. On April 25, 1980, at defendant's place of business, Harold Ledsinger entered into an agreement with defendant to purchase certain auto parts. At that time, Mr. Ledsinger made a down payment of $100. When Ledsinger returned to defendant's business on May 19,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1980, to pay the balance owed on the parts he was told that the price had been increased above that in the written contract. It is alleged that in front of and within the hearing of third parties, defendant called Harold Ledsinger a "nigger" and told him that he should get his "black ass" out of the store. In addition, it is alleged that defendant stated that he "did not want or need nigger business". Plaintiffs further claim that defendant's conduct caused Mr. Ledsinger public humiliation, embarrassment from being thrown out of a public place, mental anguish, anxiety and mortification resulting in physical revulsion, increased blood pressure, nervousness, the inability to sleep, an altered physical state that took days to leave, as well as other physical injury to his nerves, emotional well-being, psyche, feelings, mental state and digestion. Plaintiffs allege that as a result of the injuries suffered by Mr. Ledsinger, Mrs. Ledsinger has been deprived of the society, services and prior conjugal happiness she shared with her husband. The various counts of plaintiffs' second amended complaint allege liability for: 1) intentional infliction of emotional distress; 2) slander; 3) violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.;* 4) invasion of privacy; 5) violation of the public accommodations law, MCL 750.146; MSA 28.343; 6) violation of the Federal Civil Rights Act, 42 USC 1983 *et seq.;* and 7) loss of consortium on the part of Mrs. Ledsinger.

I

In *Partrich v Muscat,* 84 Mich App 724, 729-730; 270 NW2d 506 (1978), this Court reiterated the test employed in reviewing summary judgments under subrule GCR 1963, 117.2(1):

"The standard governing this Court's review of a grant or denial of a motion for summary judgment based on GCR 1963, 117.2(1) is well settled. The motion is to be tested by the pleadings alone. *Todd v Biglow,* 51 Mich App 346; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974). The motion tests the legal basis of the complaint, not whether it can be factually supported. *Borman's, Inc v Lake State Development Co,* 60 Mich App 175; 230 NW2d 363 (1975). The factual allegations of the complaint are taken as true, along with any inferences or conclusions which may fairly be drawn from the facts alleged. Unless the claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover, the motion under this subrule should be denied. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972)."

Pursuant to this standard we consider each of the theories of liability set forth in plaintiffs' second amended complaint, taking as true the factual allegations contained therein along with those inferences and conclusions which may fairly be drawn.

## II

The first count of plaintiffs' second amended complaint puts forth an intentional infliction of emotional distress theory of liability. Michigan law clearly recognizes this tort as a distinct and separate cause of action. *Campos v General Motors Corp,* 71 Mich App 23, 25; 246 NW2d 352 (1976), *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386; 239 NW2d 380 (1976), *Frishett v State Farm Mutual Automobile Ins Co,* 3 Mich App 688; 143 NW2d 612 (1966). This Court has adopted those standards enunciated in 1 Restatement Torts, 2d, § 46, pp 71-72:

"(1) One who by extreme and outrageous conduct

intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

"(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

"(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

"(b) to any other person who is present at the time, if such distress results in bodily harm." *Warren v June's Mobile Home Village & Sales, Inc, supra,* 390.

With regard to the requirement that the defendant's conduct be "extreme and outrageous", § 46, comment d, p 73 of the Restatement states:

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.,* 390-391.

The critical issue in this case is whether the defendant's conduct can be characterized as extreme and outrageous or whether, as defendant contends, the actions merely rose to the level of insult, indignity, threat, annoyance, petty oppres-

sion or triviality. As noted in Part I, above, we must take plaintiffs' factual allegations as true, along with those inferences and conclusions that may be fairly drawn, and determine whether defendant's conduct must, as a matter of law, be classified *not* extreme and outrageous so as to make plaintiffs' claim clearly unenforceable. It is essential in making this assessment to look to the context in which the remarks were made. Although the Restatement acknowledges that the law in this area is in a stage of development,[1] it points toward a contextual approach. For example, the extreme and outrageous character of the conduct may arise from the position of the actor, his relation to the distressed party, or from his knowledge of peculiar susceptibilities of the distressed party. Moreover, where the actor does no more than insist upon his own legal rights, liability will not be imposed. 1 Restatement Torts, 2d, § 46, comments e-g, pp 74-76.

In certain contexts, a racial or ethnic slur may not be extreme and outrageous.[2] In a rough-edged society, we are "expected and required to be hardened to a certain amount of rough language, and to occasional acts that are inconsiderate and unkind". 1 Restatement Torts, 2d, *supra,* p 73. A racial slur may, at times, merely be such "rough language". In other circumstances, the same slur may be viewed beyond the bounds of decency, atrocious and utterly intolerable in a civilized

---

[1] 1 Restatement Torts, 2d, § 46, comment c, p 72.

[2] Indeed, words that generally refer derogatorily to racial or ethnic classes may, in some instances, not even rise to the level of insult. For example, I may refer to one of my colleagues by way of ethnic slang without any intended or resulting slur, insult or vilification. Rather, that remark would instead express the warmth and admiration I feel for that colleague, and would proudly acknowledge that persons of different ethnic origins can work together and engender mutual respect.

community. Consider the national cabinet official who, when asked why his political party was comprised of so few blacks, remarked in grossly sexual and scatological language that members of the minority group simply had other interests. When the comments were reported by the mass media they were universally condemned and the official was forced to resign, despite the fact that the statement did not reflect his true feelings.[3] The strong public outcry that resulted is evidence of the condemnation given in this society to blatant expressions of racial inferiority, there made in the context of discussing minority political participation.

We believe the racial slurs in the instant case, taken in the context in which they were made, could be considered by a trier of fact to be extreme and outrageous. Defendant called Mr. Ledsinger a "nigger" while in the process of throwing Ledsinger out of his place of business, ostensibly a public establishment. His remarks that he "did not want or need nigger business" implied, that, irrespective of their contractual dispute, Ledsinger would not be dealt with further because of the color of his skin. Therefore, this case presents not merely that name-calling which one might be expected to endure but slurs in the course of a discriminatory act. See, *e.g., Agarwal v Johnson,* 25 Cal 3d 932; 603 P2d 58; 160 Cal Rptr 141 (1979), *Alcorn v Anbro Engineering, Inc,* 2 Cal 3d 493; 86 Cal Rptr 88; 468 P2d 216 (1970); see generally 40 ALR3d 1290. Critical to this case and to defendant's ability to inflict distress is the relation between the parties, that of a public merchant to his customer. Defendant's position permitted him

[3] Newsweek, October 11, 1976, p 26; Time, October 18, 1976, p 23; U.S. News & World Report, October 18, 1976, p 18.

to accept or reject Mr. Ledsinger's business. The inference to be drawn from plaintiffs' complaint is that defendant ultimately rejected that business based on racial considerations and thereby abused the position he stood in. 1 Restatement Torts, *supra,* comment e, pp 74-75.

We conclude that the allegations of plaintiffs' complaint were sufficient to state a cause of action for intentional infliction of emotional distress. The trial court erred in granting summary judgment dismissing that count of plaintiffs' suit.

## III

The second count of plaintiffs' second amended complaint claimed liability for slander of Mr. Ledsinger. A communication is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter others from associating with him. *Nuyen v Slater,* 372 Mich 654, 662 fn; 127 NW2d 369 (1964). In assessing whether language is defamatory, the person making the communication is liable for that meaning that is most natural and is actually fairly accepted under the particular circumstances. *Wieman v Mabee,* 45 Mich 484, 485-486; 8 NW 71 (1881), *Simons v Burnham,* 102 Mich 189, 193; 60 NW 476 (1894). In order for words to be considered in a different sense from their natural and ordinary import it is necessary that particular facts be alleged to lend credence to the alternative construction claimed. *Simons v Burnham, supra,* 195-196. In the instant case, although the racial epithet "nigger" may be offensive, its natural and ordinary import is as a slang term referring to members of the Negro race, a meaning that is not defamatory. Plaintiffs allege no particular circumstances to support their claim that the word had

other meanings or innuendo. Absent an actual defamation plaintiffs' action for slander is unenforceable as a matter of law. The trial court's grant of summary judgment on that count was appropriate.

## IV

The third count of plaintiffs' complaint alleges violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* Section 302 of the act, MCL 37.2302; MSA 3.548(302), makes it unlawful to:

"(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status.

"(b) Print, circulate, post, mail, or otherwise cause to be published a statement, advertisement, notice, or sign which indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service will be refused, withheld from, or denied an individual because of religion, race, color, national origin, age, sex, or marital status, or that an individual's patronage of or presence at a place of public accommodation is objectionable, unwelcome, unacceptable, or undesirable because of religion, race, color, national origin, age, sex, or marital status."

The act defines a "place of public accommodation" as "a business, or an educational, refreshment, entertainment, recreation, health or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public". MCL 37.2301(a); MSA 3.548(301)(a).

An inference that might fairly be drawn from plaintiff's allegations is that defendant ultimately denied Mr. Ledsinger the sale of goods because of Ledsinger's race, MCL 37.2302(a); MSA 3.548(302)(a). Moreover, defendant's alleged statement that he "did not want or need nigger business", if established, would constitute the publication of a statement that full and equal enjoyment of the goods sold at defendant's establishment would be withheld on the basis of race. MCL 37.2302(b); MSA 3.548(302)(b). Therefore, plaintiffs' complaint appears to set forth two violations of the Elliott-Larsen Civil Rights Act.

The act authorizes a person alleging a violation to bring a civil action for injunctive relief or damages. MCL 37.2801(1); MSA 3.548(801)(1). Compensatory and exemplary damages may be recovered for the indignity and anguish caused by discrimination. *Freeman v Kelvinator, Inc,* 469 F Supp 999, 1003-1004 (ED Mich, 1979). The damages recovered may also include reasonable attorney fees. MCL 37.2801(3), 37.2802; MSA 3.548(801)(3), 3.548(802). Inasmuch as plaintiffs have stated a cause of action under the act, the grant of summary judgment on that count of their complaint was error.

## V

The fourth count of plaintiffs' second amended complaint alleges that defendant's conduct constituted an invasion of Mr. Ledsinger's right to privacy. Plaintiffs' theory is that when defendant called Ledsinger a "nigger" he published an embarrassing private fact about Ledsinger.

Michigan law recognizes that an invasion of privacy claim may be grounded on the public

disclosure of embarrassing private facts about the plaintiff. *Beaumont v Brown,* 401 Mich 80, 95, fn 10; 257 NW2d 522 (1977), *Fry v Ionia Sentinel-Standard,* 101 Mich App 725, 728; 300 NW2d 687 (1980). Such an invasion requires the disclosure of information that would be highly offensive to a reasonable person and of no legitimate concern to the public. The information disclosed must be of a private nature; liability will not be imposed for giving publicity to matters that are already of public record or otherwise open to the public eye. *Fry, supra,* 728-729, citing 3 Restatement Torts, 2d, § 652D, comment b, pp 385-386.

Here, the alleged epithet, although offensive, revealed about plaintiff only that he was black. As noted above, plaintiffs have not alleged facts that would point to an alternative construction. Additionally, there are no allegations that Mr. Ledsinger's race was in the nature of a private fact or, for that matter, that it was something that would be highly offensive to a reasonable person. Thus, plaintiffs have failed to state a cause of action for invasion of privacy. Disposition of that count by summary judgment was proper.

## VI

The fifth count of plaintiffs' second amended complaint alleges a violation of Michigan's public accommodations law, MCL 750.146; MSA 28.343. The statute reflects the Legislature's special concern for eliminating discrimination based on race, creed or color. *Riegler v Holiday Skating Rink,* 393 Mich 607, 610-611; 227 NW2d 759 (1975). The law provides that all persons within the state jurisdiction "shall be entitled to full and equal accommodations, advantages, facilities and privileges of",

among other facilities, "stores". MCL 750.146;
MSA 28.348. Under the statute it is a misde-
meanor to withhold or deny accommodations based
on race. In addition to the criminal penalty, the
law provides that a violator is liable to an injured
party for treble damages, recoverable in a civil
action. MCL 750.147; MSA 28.344.

As stated in Part IV, above, plaintiffs' allega-
tions allow a fair inference that defendant ulti-
mately denied Mr. Ledsinger equal accommodation
in his store based on Ledsinger's race. Conse-
quently, plaintiffs have stated a cause of action
under the public accommodations law and the trial
court erred in dismissing that count of their com-
plaint by summary judgment.

## VII

The sixth count of plaintiffs' second amended
complaint alleges that defendant's conduct vio-
lated Mr. Ledsinger's federal civil rights under 42
USC 1983. That statute reads:

"Every person who, under color of any statute, ordi-
nance, regulation, custom, or usage, of any State or
Territory or the District of Columbia, subjects, or causes
to be subjected, any citizen of the United States or
other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to
the party injured in an action at law, suit in equity, or
other proper proceeding for redress."

Although state courts exercise concurrent juris-
diction over federal civil rights claims, *Dickerson v
Warden, Marquette Prison,* 99 Mich App 630, 634;
298 NW2d 841 (1980), to state a cause of action a
plaintiff must show that the alleged deprivation

occurred while the defendant was acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory". *Adickes v S H Kress & Co,* 398 US 144, 150; 90 S Ct 1598, 1604; 26 L Ed 2d 142, 150 (1970), *Three Lakes Ass'n v Whiting,* 75 Mich App 564, 576-578; 255 NW2d 686 (1977). Plaintiffs' complaint is utterly devoid of allegations that defendant acted under the color of state law. Summary judgment was correctly granted on this count.

## VIII

The final count of plaintiffs' second amended complaint claims liability to Mrs. Ledsinger for loss of consortium.

Michigan law clearly recognizes the right of a person to recover damages for loss of consortium caused by injuries wrongfully inflicted upon that person's spouse. *Montgomery v Stephan,* 359 Mich 33; 101 NW2d 227 (1960). Loss of consortium includes not only "conjugal fellowhip" but also "society, companionship, service, and all other incidents of the marriage relationship". *Washington v Jones,* 386 Mich 466, 472; 192 NW2d 234 (1971). In the instant case, inasmuch as plaintiffs have stated valid causes of action for intentional infliction of emotional distress, for violation of the Elliott-Larsen Civil Rights Act and for violation of the public accommodations law, Mrs. Ledsinger has a viable derivative cause of action for loss of consortium. *Cf. Ramsey v P DiLegge & Sons, Inc,* 39 Mich App 385, 387-388; 197 NW2d 483 (1972). The trial court erred in granting summary judgment with regard to that count.

## CONCLUSION

Plaintiffs' second amended complaint sufficiently alleges causes of action for intentional infliction of emotional distress, violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* violation of the public accommodations law, MCL 750.146; MSA 28.343, as well as loss of consortium under these three theories. Summary judgment under GCR 1963, 117.2(1) was improper as to these counts. Plaintiffs' remaining claims were appropriately dismissed.

Affirmed in part, reversed in part and remanded for further proceedings. No costs, neither party having prevailed in full.