William G. WILSON, Plaintiff,

v.

Gunter H. KISS, Defendant.

No. 89–CV–73241–DT.

United States District Court,
E.D. Michigan, S.D.

Dec. 5, 1990.

Robert S. Krause, Brian K. Cullin, Detroit, Mich., for plaintiff.

Gary E. Levitt, Birmingham, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

## I. INTRODUCTION

Plaintiff filed a multi-count complaint against defendant for torts allegedly arising out of an employment relationship between the parties. Plaintiff seeks monetary relief for alleged mental and financial injuries.

This matter now comes before the Court on defendant's 12(b)(6) motion to dismiss plaintiff's claims for Intentional Infliction of Emotional Distress and for Fraudulent Misrepresentation. Plaintiff filed a timely response, and both parties have fully briefed the relevant issues. Pursuant to E.D.Mich.Local R. 17(*l*,) the Court addresses the motion without entertaining oral argument.

Upon review of the motion, briefs, and file in this case, the Court finds that, plaintiff has pled legally sufficient emotional distress and fraud claims. Accordingly, the Court denies defendant's motion to dismiss.

## II. STANDARD OF REVIEW

Defendant addresses his motion as one for dismissal under Fed.R.Civ.P. 12(b)(6). A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F.Supp. 1458, 1463 (E.D.Mich.1986); *Hudson v. Johnson*, 619 F.Supp. 1539, 1542 (E.D. Mich.1985). A claim shall not be dismissed unless plaintiff fails to prove, beyond doubt, a set of facts to support his claim for relief. *Janan*, 785 F.2d at 558. "In evaluating the propriety of a dismissal under Rule 12(b)(6), the factual allegations in the complaint must be treated as true." *Janan v. Trammell*, 785 F.2d 557, 558 (6th Cir.1986); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). Thus, the following facts are gleaned from plaintiff's complaint.

## III. FACTS

Prior to June 1985, plaintiff worked for many years as a manufacturer's representative in the automobile industry. Before plaintiff established an employment relationship with defendant, plaintiff owned and operated a company providing manufacturer's representative services to the automotive industry.

Defendant suggested that plaintiff work with Lignotock Entities (Lignotock), a

group of manufacturing service companies owned by defendant, to create an organization in the United States to sell Lignotock equipment and products to members of the U.S. automotive industry. Defendant allegedly indicated that such employment would offer plaintiff the opportunity to work for a multi-million dollar corporation, to earn great salaries and commissions, and to gain a secure future.

In pursuit of such rewards, plaintiff entered into a five year employment contract with defendant and Lignotock. As a result, plaintiff ceased working with his own company. In accordance with his job duties and on behalf of Lignotock, plaintiff allegedly procured numerous sales orders and contracts, one of which was with General Motors (GM).

The GM contract called for Lignotock to provide interior door panels for all GM L-body line automobiles. The contract further specified that payment would be in U.S. dollars. Plaintiff alleges that after the formation of the GM contract, the exchange rate between the U.S. dollar and the German deutsche mark changed in favor of the mark. As a result, Lignotock sought payment from GM in deutsche marks. To this end, defendant forced plaintiff to withhold Lignotock door panels, unless GM agreed to modify its contract and pay in marks.

Plaintiff refused to comply with defendant's request because, plaintiff contends, defendant's effort to force a modification of the contract with GM constituted a criminal attempt to obtain money under false pretenses. Because of plaintiff's refusal to engage in such criminal conduct, defendant terminated plaintiff's employment relationship.

Consequently, plaintiff filed a lawsuit against defendant, alleging that defendant acted in contravention of the public policy of the State of Michigan and/or the United States (Count I), tortiously interfered with plaintiff's business and prospective economic relationships with GM and other automotive companies (Count II), intentionally caused plaintiff to suffer emotional distress (Count III), tortiously interfered with plaintiff's contractual relationship with Lignotock (Count IV), and made false misrepresentations in an effort to encourage plaintiff to work with Lignotock (Count V).

Defendant countered by filing a Rule 12(b)(6) motion to dismiss the claims of emotional distress (Count III) and fraudulent misrepresentation (Count V) in plaintiff's complaint. With respect to plaintiff's claim for emotional distress, defendant contends that plaintiff has not alleged severe emotional distress, that more generally plaintiff cannot recover damages for mental distress, and that plaintiff failed to demonstrate extreme and outrageous conduct. Regarding plaintiff's claim for fraudulent misrepresentation, defendant contends that plaintiff has improperly based his claim on an expression of opinion and/or a contractual promise, and that plaintiff could not have relied on defendant's statements in accepting employment with Lignotock. Thus, defendant contends that plaintiff's claims for emotional distress and fraudulent misrepresentation lack legal sufficiency and must be dismissed.

## IV. DISCUSSION

### A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ Courts that have recognized the tort of mental distress,[1] including *Pratt v. Brown*, 855 F.2d 1225 (6th Cir.1988), have

---

1. The Michigan Supreme Court has not specifically held that an action for intentional infliction of emotional distress may be brought under Michigan common law. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 597, 374 N.W.2d 905 (1985) (holding "[w]e are constrained from reaching the issue of whether [the tort of intentional infliction of emotional distress] should be formally adopted into our jurisprudence....."). Nonetheless, some Michigan Court of Appeals panels have recognized the cause of action.

*See, e.g., Dickerson v. Nichols*, 161 Mich.App. 103, 409 N.W.2d 741 (1987). Similarly, the Sixth Circuit Court of Appeals has also recognized the tort under Michigan law. *Pratt v. Brown*, 855 F.2d 1225 (6th Cir.1988). Pursuant to *Pratt*, this Court proceeds under the belief that a claim for intentional infliction of emotional distress is actionable under Michigan law, notwithstanding the lack of a Michigan Supreme Court promulgation to that effect.

identified four elements essential to a prima facie claim: (1) extreme and outrageous conduct that is (2) intentional or reckless and (3) causes (4) severe emotional distress.

### 1. Sever Emotional Distress

Defendant argues that plaintiff did not allege sever emotional distress. Plaintiff points to his complaint in arguing that he has properly pled severe emotional distress. The Court is not persuaded by defendant's argument.

■ The commentary to the Second Restatement of Torts explains the emotional distress requirement as follows:

The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, *mental anguish,* mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, *humiliation, embarrassment,* anger, chagrin, disappointment, worry, and nausea. . . .

(emphasis added). Plaintiff quite clearly alleges in paragraph forty-three that defendant's conduct caused embarrassment and humiliation, as well as mental and emotional anguish. Thus, plaintiff's averments of mental distress fall squarely within the Restatement's legal description of the type of distress necessary to support a claim. Therefore, the Court finds that plaintiff has properly pled severe emotional distress.

### 2. Recovery for Mental Distress

■ Defendant next argues that even if plaintiff has alleged severe emotional distress, Michigan courts have refused to award damages for emotional distress arising out of economic relationships. Defendant's argument lacks merit.

Defendant relies on *Kewin v. Massachusetts Mutual Life Ins. Co.,* 409 Mich. 401, 295 N.W.2d 50 (1980), in arguing that Michigan law does not recognize damages for

mental distress when the parties enjoy merely an economic relationship. Because plaintiff and defendant enjoyed an employment relationship, defendant argues that plaintiff cannot recover damages for emotional distress. This argument misconstrues the import of *Kewin,* its progeny, and similar cases.

*Kewin* held that damages for mental distress are not recoverable in a lawsuit for breach of an insurance contract. But *Kewin* is distinguishable from the instant case. In this case, plaintiff has not attempted to recover damages for mental distress in a breach of contract action. Instead, plaintiff seeks such damages in a tort action for intentional infliction of emotional distress. This distinction carries much significance in light of *Roberts v. Auto Ins,* 422 Mich. 594, 374 N.W.2d 905 (1985), in which the court noted that *Kewin* did not preclude the emergence of a separate tort for intentional infliction of emotional distress.

In moving from *Kewin* to *Roberts,* the analytical focus shifts from an examination of damages recoverable in contract to the consideration of a distinct cause of action in tort. Thus, the *Roberts* court observed that while mental distress damages were not recoverable in contract, a tort action for intentional infliction of emotional distress can exist in a contractual context.[2]

In the instant case, plaintiff has not sued under contract theories of recovery. Therefore, plaintiff's attempt to recover damages for mental distress does not trigger *Kewin*'s prohibition. Rather, plaintiff has pled tort theories, which pursuant to *Roberts* can form the basis for awarding mental distress damages. Consequently, defendant's argument that plaintiff's claim is not actionable under Michigan law must fail.

### 3. Extreme and Outrageous Conduct

■ Defendant also argues that his conduct, as a matter of law, was not extreme and outrageous as those terms are

---

**2.** Such a claim must rest on a breach of duty distinct from the contractual duties of the par-

ties. *Roberts,* 422 Mich. at 604, 374 N.W.2d 905.

defined by the Restatement and Michigan case law. Plaintiff argues to the contrary. The Court concludes that plaintiff, as a matter of law, has properly pled extreme and outrageous conduct.

The term "extreme and outrageous conduct" has acquired a unique and particular meaning for purposes of maintaining an emotional distress action in Michigan:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Roberts*, 422 Mich. at 602–03, 374 N.W.2d 905 (citing Restatement Torts, 2d, § 46, comment d, pp. 72–73).[3] The extreme and outrageous character of the conduct may arise from the position of the actor or a relationship to the distressed party. *Ledsinger v. Burmeister*, 114 Mich.App. 12, 19, 318 N.W.2d 558 (1982). Such conduct may occur through the abuse of a relationship that puts the defendant in a position of actual or apparent authority over a plaintiff or gives a defendant power to affect a plaintiff's interest. *Margita v. Diamond Mortgage Co.*, 159 Mich.App. 181, 189, 406 N.W.2d 268 (1987) (citations omitted). Whether a defendant's acts were sufficiently outrageous depends on the context in which the defendant committed them. *Rosenberg v. Rosenberg Bros.*, 134 Mich. App. 342, 353, 351 N.W.2d 563 (1984).

In *Ledsinger*, defendant-merchant used racial slurs and insults to express his intent to discontinue his dealings with plaintiff-customer. The court noted that the ethnic and/or racial slurs were not *per se* extreme and outrageous. Rather, the slurs and insults coupled with defendant's abuse of his authoritative position over plaintiff were sufficient to support a claim for emotional distress.[4]

In *Rosenberg*, defendant attempted to coerce plaintiff-widow into selling her deceased husband's share of a family owned partnership to defendant at a reduced price. Plaintiff depended on defendant for income and record keeping. In twenty-six separate instances, defendant had attempted to "browbeat" plaintiff into selling the partnership interest. This repeated harassment together with plaintiff's position of financial dependency supported a tort claim for emotional distress.

---

**3.** Whether defendant's conduct meets the threshold requirement for outrageousness is a question of law to be decided by the Court. *Sawabini v. Desenberg*, 143 Mich.App. 373, 383, 372 N.W.2d 559 (1985) (it is initially for the trial judge to decide whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress).

**4.** In *Khalifa v. Henry Ford Hosp.*, 156 Mich.App. 485, 401 N.W.2d 884 (1986), the court held that ethnic insults, threats of unwarranted disciplinary reports, employment termination, and professional humiliation, together, did not support a claim for mental distress.

For two reasons, the *Khalifa* court denied the damage claim for emotional distress. First, such damages are not recoverable in an action for breach of contract (plaintiff sued under both tort and contract). *Khalifa*, 156 Mich.App. at 499, 401 N.W.2d 884 (citing *Valentine v. General American Credit*, 420 Mich. 256, 362 N.W.2d 628 (1984)). Second, the court noted that Michigan had yet to officially recognize an independent tort action for intentional infliction of emotional distress. *Khalifa*, 156 Mich.App. at 499–500, 401 N.W.2d 884 (citing *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985)); therefore, the court implied that a separate tort for mental distress was not cognizable under Michigan common law.

However, *Khalifa* is distinguishable from the instant case. Unlike *Khalifa* and *Valentine*, this case does not involve a breach of contract action. Also, since *Khalifa*, the Sixth Circuit Court of Appeals has unequivocally recognized under Michigan common law the independent tort of intentional infliction of emotional distress. *See Pratt*, 855 F.2d 1225. Thus, the limitations of *Valentine* and the uncertainty of *Roberts*, two legal impediments facing the plaintiff in *Khalifa*, pose no problems in the instant case. Accordingly, *Khalifa* does not control the instant case.

In *Margita*, defendant made harassing phone calls, threatened foreclosure, and mailed late charge letters to plaintiff-homeowner on a debt that was not outstanding. The court held that the continuous unnecessary harassment over nearly two years might easily be considered extreme and outrageous conduct. Thus, the court upheld the legal challenge to plaintiff's claim for intentional infliction of emotional distress.

In each case mentioned above, a combination of position, power, abuse, and significant perturbation rose above the level of mere insult, indignity, threat, annoyance, petty oppression and triviality to support a tort claim for mental distress.

In light of the above mentioned cases, the allegations contained in plaintiff's complaint, accepted as true, indicate conduct that arguably exceeds the threshold standard for extreme and outrageous conduct. Plaintiff claims that defendant's conduct was extreme and outrageous because defendant utilized his authoritative position as employer to demand that plaintiff engage in criminal acts or risk discharge. Pursuant to *Ledsinger, Rosenberg,* and *Margita*, plaintiff has stated a legally sufficient cause of action. Defendant in this case abused his employment relationship with plaintiff by forcing plaintiff to chose between committing a criminal act or losing his job. Such abuse put defendant in a position of superiority and actual authority over plaintiff and gave defendant the ability to affect plaintiff's interests.

It is not true that every wrongful termination or employer abuse, alone, will give rise to a claim for intentional infliction of emotional distress. Nor will a criminal act, by itself, generate a tort claim for mental distress.[5] But when both elements combine, that is when an employer gains a position of authority over an employee and forces the latter to chose between performing a criminal act or losing his job, it cannot be said as a matter of law that such conduct is not extreme and outrageous.

Defendant attempts to distinguish this case by noting that plaintiff is not as vulnerable as the plaintiffs in the cases above—a browbeaten widow, an insulted customer, and a harassed homeowner. Defendant characterizes plaintiff as a sophisticated businessman who had significant bargaining power in his dealings with defendant. Defendant's version of the facts may not be fairly implied from the allegations of the complaint,[6] and thus are not to be considered under Rule 12(b)(6). Whether plaintiff was sophisticated and thus possessed substantial bargaining power relative to defendant remains a factual question for the trier of fact.

Defendant also argues that the courts in *Rosenberg* and *Margita* were confronted with a pattern of abusive conduct over a period time. While the pattern of abusive conduct certainly entered into the courts' decisions, it was only one factor in the courts' analyses. Both the *Rosenberg* and *Margita* courts indicated in their opinions that a finding of outrageousness necessarily depended on the totality of the circumstances. In determining whether a defendant's conduct is extreme and outrageous, the existence of a pattern of repeated abuse over time is not dispositive.

A single event, under the right circumstances, may be extreme and outrageous. The Michigan Court of Appeals agrees. In *Ledsinger*, a single confrontation involving racial slurs and insults adequately supported, as a matter of law, a claim for intentional infliction of emotional distress. In the instant case, defendant's conduct, forcing an employee to commit a criminal act or to lose his job, may be considered extreme and outrageous by a trier of fact.[7]

---

**5.** This much is reflected in the Restatement commentary.

**6.** The complaint does not detail plaintiff's commercial accomplishments and/or his business acumen prior to entering the employment relationship with defendant. Therefore, according to the complaint, the Court does not know if plaintiff was at all sophisticated.

**7.** The abusive employer-employee relationship in this case compels a finding of extreme and outrageous conduct more readily than the merchant-customer relationship in *Ledsinger*. Generally, an employment relationship may be

Defendant occupied a position of authority and power over plaintiff. Pursuant to Michigan case law, defendant's abuse of this relationship coupled with defendant's criminal behavior fits the pattern of conduct supporting a finding of extreme and outrageous conduct. Accordingly, the Court concludes that plaintiff has pled, with legally sufficiency, extreme and outrageous conduct on the part of the defendant.

## B. FRAUDULENT MISREPRESENTATION

To recover for fraud, it must appear (1) that the defendant made a material representation, (2) that such representation was false, (3) that when such representation was made, the defendant knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion, (4) that defendant made it with the intention that it should be acted upon by plaintiff, (5) that plaintiff acted in reliance upon it, and (6) that plaintiff thereby suffered injury. *Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976).

### 1. The Misrepresentation: Facts, Opinions, and Promises

First, defendant contends that plaintiff has based his claim on an unactionable expression of opinion. Plaintiff argues that defendant's statements were factual, and therefore actionable. The Court finds that defendant's alleged statements were factual and support a claim for fraudulent misrepresentation.

■ An action for fraudulent misrepresentation must be based on a misstatement of fact and not upon an expression of opinion. *Mieske v. Harmony Electric Co.*, 278 Mich. 61, 66, 270 N.W. 216 (1936). Generally, a statement of mere belief or opinion does not support an action for fraudulent misrepresentation. *Platsis*, 829 F.2d at 1293.

one's sole means of support, and is more intimate and sensitive than a customer-merchant

■ In the instant case, plaintiff describes defendant's alleged fraudulent misrepresentation in paragraph eleven of the complaint:

That Defendant KISS represented to the Plaintiff, for the purposes of inducing him to enter into employment with said Defendant and/or the Lignotock entities, that Plaintiff would be getting in on the ground floor of what was a great opportunity with a multi-million dollar corporation with great responsibilities and the opportunity to earn tremendous amounts of money in salary and commissions and to have a secure future.

Defendant contends that these representations are expressions of opinion, not statements of fact. The Court disagrees.

Defendant's alleged statements do not present any shades of speculation. Defendant did not qualify his statements with phrases like "I think ..." or "I believe...." Rather, defendant made strong declarative statements relating to the tangible benefits of employment with Lignotock. His statements to plaintiff paint a portrait of Lignotock as it actually existed. Hence, defendant's statements represent facts, which as a matter of law support a claim for fraudulent misrepresentation.

■ Next, defendant claims that his statements refer to promises to render future performance, promises that may not serve as the basis for a claim of fraud. Plaintiff claims that although defendant's statements do represent promises for future performance, such promises are actionable under an exception to the general rule. The Court agrees with plaintiff.

As a general rule, a misrepresentation must relate to an existing or pre-existing fact. *Platsis v. E.F. Hutton & Co., Inc.*, 829 F.2d 13 (6th Cir.1987); *Higgins v. Lawrence*, 107 Mich.App. 178, 309 N.W.2d 194 (1981). Thus, promises to render future performance may not serve as the basis for a claim of fraud. *Connellan v. Himelhoch*, 506 F.Supp. 1290 (E.D.Mich.1981); *Boston Piano & Music Co. v. Pontiac*

relationship.

*Clothing Co.*, 199 Mich. 141, 165 N.W. 856 (1917). However, an action for fraud, as an exception to the general rule, may be predicated upon a promise made in bad faith without a present intent to perform (bad faith exception). *Hi–Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813 (1976); *Crowley v. Langdon*, 127 Mich. 51, 86 N.W. 391 (1901). In sum, under Michigan law, a material representation, as a matter of law, must be a statement of fact—not an expression of opinion—and cannot be a future promise, unless it is a future promise made in bad faith and without a present intention to perform.

Defendant's promised an opportunity to work with a multi-million dollar firm, to enjoy significant responsibilities, and to earn large commissions and salaries. Thus, it is fair to construe defendant's statements as promises relating to the terms and conditions of plaintiff's future employment. Defendant argues that these promises of future performance are not actionable under Michigan law. But as defendant concedes, a bad faith exception to the general rule exists. Therefore, if plaintiff can demonstrate that defendant made the future promises in bad faith and without a present intent to perform, then plaintiff's claim will fall squarely within the exception to the rule.

 Defendant argues that even if plaintiff has a claim under the bad faith exception to the rule, it cannot be brought unless it is pled in his complaint.[8] No case law supports such a claim. Under Michigan case law, no special pleading requirements apply to claims relying on the bad faith exception. The Michigan Supreme Court has repeatedly stated that the six elements mentioned above represent a prima facie case for fraudulent misrepresentation.[9] Plaintiff has pled all six.

8. Plaintiff first raised the bad faith exception in his response brief to defendant's motion.

9. The Michigan Supreme Court has indicated that a bad faith promise made without a present intent to perform is merely one variant of the first element (i.e., "material misrepresentation") of a prima facie case. *See Hi–Way Motor Com-*

### 2. Reliance on Misrepresentation

 Finally, defendant argues that plaintiff could not have relied on defendant's statements in accepting employment with Lignotock. Defendant argues that because the employment contract between plaintiff and Lignotock expressly set forth the terms of plaintiff's employment and plaintiff's rate of compensation, plaintiff could not have relied upon representations inconsistent with his written contract. Defendant's argument is unconvincing.

Defendant's argument assumes that his representations are not part of the contract, an assumption that does not explicitly appear in plaintiff's complaint and that cannot be readily inferred from the allegations of the complaint. Moreover, the issue of reliance presents a question of fact that the Court will not, and cannot, consider under Rule 12(b)(6).

### V. CONCLUSION

For all of the foregoing reasons, the Court concludes that plaintiff has pled legally sufficient claims for intentional infliction of emotional distress and for fraudulent misrepresentation. Accordingly, defendant's motion to dismiss is hereby DENIED.

IT IS SO ORDERED.

*pany,* 398 Mich. at 336–339, 247 N.W.2d 813 (in determining whether a material misrepresentation existed, the court first characterized the defendant's statements as unactionable promises of future performance, but also considered whether they fell within the bad faith exception to the rule).